533 S.E.2d 913

**Frances DUNBAR, Appellant/Respondent,**

v.

**Paul H. CARLSON, D.M.D., Respondent/Appellant.**

No. 3194.

Court of Appeals of South Carolina.

Heard May 8, 2000.

Decided June 19, 2000.

Rehearing Denied Sept. 2, 2000.

262

Henry Hammer, Howard Hammer, G. Randall McKay and Arthur A. Aiken, all of Hammer, Hammer, Carrigg & Potterfield, of Columbia, for Appellant/Respondent.

Daniel R. Settana, Jr., and John R. Delmore, both of McKay & McKay; and Ruskin C. Foster, of McCutchen, Blanton, Rhodes & Johnson, all of Columbia, for Respondent/Appellant.

HEARN, Chief Judge:

This is a cross-appeal in a dental malpractice action. We affirm the trial judge's denial of Dr. Paul Carlson's motion to amend his answer to assert the statute of repose, and reverse his grant of Carlson's motion to amend to assert the statute of limitations and his grant of a directed verdict on that basis.

## FACTUAL/PROCEDURAL BACKGROUND

Frances Dunbar began seeing Carlson in 1983 or 1984. He was her only dentist until 1994. Dunbar saw Carlson many times during this period, and on one of her visits he advised her to have all of her lower teeth crowned. However, Carlson only cleaned her teeth a couple of times during the ten years she was his patient, and he never informed Dunbar she was suffering from periodontal disease. During one two-year period, Carlson placed Dunbar on twenty regimens of antibiotics due to the infections she was having, and her face became badly swollen and painful. Nevertheless, Dunbar liked Carlson and never questioned his treatment.

After noticing Dunbar was constantly on antibiotics, her daughter, Rose Taylor, accompanied her on her last visit to Carlson on June 24, 1994. At that visit, Carlson announced that he had called the Medical University of South Carolina in Charleston and arranged for Dunbar to have all of her teeth extracted. He did not tell her she had periodontal disease. Taylor requested her mother's records and Dunbar was subsequently treated by Dr. Harold Jablon. Jablon found she had severe periodontal abscesses (infections of the teeth) and diagnosed her with "severe advanced periodontal disease."

Dunbar filed this medical malpractice action against Carlson on September 26, 1995, alleging he failed to diagnose and/or treat her periodontal disease, which ultimately resulted in severe bone loss and the extraction of all her teeth. Dunbar averred that in June 1994 she first became aware and was informed that she had severe bone loss and periodontal disease caused by Carlson's failure to diagnose and/or treat the condition during the time she was his regular patient.

At trial, Jablon was qualified as an expert in dentistry. He testified Dunbar's periodontal disease was the type of disease a general dentist would be expected to identify, and that it would be the obligation of the general dentist to inform the patient of the condition and provide treatment or to refer the patient to a specialist, such as a periodontist. He further testified that due to Carlson's failure to treat Dunbar, he ultimately had to extract all of her teeth due to severe advanced periodontal disease. Jablon found no indication in Carlson's notes that he had recognized this problem. He stated Dunbar should have been informed that she had a

condition that needed treatment. Jablon estimated that when Dunbar came to him in 1994, her condition had been progressing for "six, seven years." When Jablon reviewed x-rays Carlson had taken of Dunbar, he could see some bone loss in one from September 1987 that would indicate the beginning stages of periodontal disease.

Rose Taylor, Dunbar's daughter, testified that she accompanied her mother on her last visit to Carlson, at which he announced he had made arrangements for Dunbar to have all of her teeth extracted at the Medical University in Charleston. She stated Carlson still did not inform her mother that she had periodontal disease, even at this last visit. On cross-examination, defense counsel asked Taylor whether when she first started going with her mother to see Carlson she thought anything was wrong. Taylor stated she supported her mother's decision, and that her mother had liked Carlson. Taylor then testified she had encouraged her mother to leave Carlson's care between 1992 and 1994. Upon further questioning from defense counsel, Taylor stated she could not be specific but thought she first advised her mother to leave Carlson in early 1992. Defense counsel stated, "Like February, March, April?" and Taylor stated that she became "very concerned" about her mother around that time.

Dunbar rested her case after this testimony. Carlson then moved to amend his answer to allege the defenses of the statute of repose and statute of limitations and for a directed verdict on those grounds. The trial judge denied the motion to amend as to the statute of repose. However, the trial judge granted Carlson's motion as to the statute of limitations and granted a directed verdict to Carlson on that ground. Both parties appeal.

## LAW/ANALYSIS

### I. Dunbar's Appeal

### A. Statute of Limitations

Dunbar contends the trial judge erred in allowing Carlson to amend his pleadings to assert the affirmative defense of the statute of limitations. We agree.

After Dunbar rested her case at trial, defense counsel argued Carlson should be allowed to amend his pleadings to

assert the three-year statute of limitations based on Taylor's testimony on cross-examination that she first advised her mother to leave Carlson in February, March, or April of 1992. Since this action was not filed until September 1995, defense counsel contended the three-year statute of limitations had run on Dunbar's claim and Carlson was entitled to a directed verdict on this basis. The trial judge agreed and allowed Carlson to amend his pleadings to conform to the evidence under Rule 15(b), SCRCP, and then granted his motion for a directed verdict based on the three-year statute of limitations.

■ Section 15-3-545(A) contains the statute of limitations governing medical malpractice actions. It provides a three-year limitations period for such claims, employing the discovery rule for determining the accrual date. S.C.Code Ann. § 15-3-545(A) (Supp.1999). The three-year statute of limitations begins to run when the facts and circumstances of the injury would put a person of common knowledge and experience on notice that some right of hers has been invaded or that some claim against a party might exist. *Johnston v. Bowen,* 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993).

■ Carlson did not plead the affirmative defense of the statute of limitations in his answer. *See* Rule 8(c), SCRCP. However, Rule 15(b), SCRCP, allows for amendments of pleadings to conform to the evidence presented at trial. It provides in pertinent part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 15(b), SCRCP. The decision whether to allow the amendment of pleadings to conform to the evidence is left to the sound discretion of the trial court. *Kelly v. South Carolina Farm Bureau Mut. Ins. Co.,* 316 S.C. 319, 323, 450 S.E.2d 59, 61 (Ct.App.1994). Amendments should be allowed if no prejudice occurs to the opposing party. Rule 15(b), SCRCP; *Soil & Material Eng'rs, Inc. v. Folly Assoc.,* 293 S.C. 498, 501, 361 S.E.2d 779, 781 (Ct.App.1987).

■ Rule 15(b) covers two situations involving amendments to conform to the evidence. "First, if an issue not raised by the pleadings is tried by express or implied consent of the parties the court may permit amendment of the pleadings to reflect the issue. Second, if a party objects to the

introduction of evidence as not being within the pleadings the court may permit amendment of the pleadings subject to a right to grant a continuance if necessary." *Sunvillas Homeowners Ass'n, Inc. v. Square D Co.*, 301 S.C. 330, 334, 391 S.E.2d 868, 871 (Ct.App.1990). "Express consent. may be demonstrated by a stipulation but implied consent depends on whether the parties recognized an issue not raised by the pleadings entered the case during the trial." *Id.* at 335, 391 S.E.2d at 871.

In this case, no objection was made to the evidence; therefore, the second part of the rule is not applicable. Further, there was no express consent. Thus, the question before us is whether the parties tried the issue by implied consent.

Carlson asserts Dunbar impliedly consented to the amendment based on her failure to object to her daughter's testimony. To the contrary, we find the failure to object in this case is evidence that Dunbar did not recognize the purpose for which Carlson sought to elicit this testimony. Carlson further argues Dunbar cannot claim the amendment prejudiced her since she did not object to the testimony. *See Woods v. Rabon*, 295 S.C. 343, 348, 368 S.E.2d 471, 474 (Ct.App.1988). We disagree. The prejudice to Dunbar is patent in that the trial judge granted a directed verdict against Dunbar immediately after permitting Carlson's amendment. Unaware this was an issue in the case, Dunbar had not offered any evidence regarding the statute of limitations.

Just prior to eliciting the testimony at issue, defense counsel repeatedly asked Taylor about her mother's health during the time she was being treated by Carlson. Counsel asked Taylor whether her mother's health "was bad" from 1992 to 1994, which Taylor confirmed. In a series of questions, defense counsel thereafter asked Taylor about her mother's hypertension, back surgery, knee problems, and neurological problems. He also asked about the fact that in 1993 to 1994, her mother's glucose levels "skyrocketed." He then asked her about taking toxic levels of medication. Counsel then stated, "When you first started going with your mother to Carlson, you never thought anything was wrong, did you? You were happy with his care; correct?" Dunbar responded, "I personally, between 1992 and 1994, encouraged my mother to leave Carlson's care. When you speak of her blood sugar as going up as you did

just, you know, infectious states can drive the blood sugar up as well, and I felt that was a primary factor in the diabetes...." Upon further questioning about when she became concerned, Taylor stated she couldn't be specific about the time frame, but thought it was in early 1992.

In *Williams v. Addison,* 314 S.C. 35, 443 S.E.2d 582 (Ct. App.1994), we observed that implied consent will not be found if all of the parties did not recognize it as an issue at trial:

> Where issues are not raised by the pleadings but are tried by consent, amendments to the pleadings are desirable because they bring the pleadings in line with the issues actually developed at the trial. Amendments to conform to the proof should be liberally allowed when no prejudice to the opposing party will result. The decision to permit an amendment is within the trial court's discretion. Nevertheless, *this Court will not find implied consent to try an issue if all of the parties did not recognize it as an issue during trial, even though there is evidence in the record—introduced as relevant to some other issue—which would support the amendment.* This is so because the opposing party may not be conscious of the relevance of the evidence to issues not raised by the pleadings if the relevance is not otherwise made clear.

314 S.C. at 38, 443 S.E.2d at 584 (citations omitted) (emphasis added).

Here, defense counsel questioned Taylor extensively about her mother's health and the time frame for her various illnesses, the obvious implication being that her mother's infections and poor condition were attributable, at least in some part, to her overall medical condition, especially her diabetes. Questions about the timing of these illnesses were pertinent to establishing proximate cause. Since the evidence was admissible for another purpose and it appears Dunbar did not recognize counsel intended to assert the statute of limitations, we conclude she did not impliedly consent to try that issue. *See Id.* Moreover, the prejudice to Dunbar is obvious. Accordingly, we reverse the trial court's decision to grant the amendment.

## B. Directed Verdict

■ Because we find the trial judge improvidently granted the motion to amend, we necessarily reverse his decision to

grant a directed verdict on the very ground asserted by that amendment. Dunbar argued in her brief and at oral argument that if this court affirmed the trial judge's decision to grant the amendment, the decision to grant a directed verdict was nonetheless error. While our decision on the propriety of the amendment resolves this appeal, we note for purposes of remand that generally, statute of limitations issues are for the jury, rather than the court, to resolve. *See Arant v. Kressler,* 327 S.C. 225, 229, 489 S.E.2d 206, 208 (1997) (stating when there is conflicting testimony regarding time of discovery of facts giving notice of a medical malpractice claim, the date on which discovery should have been made becomes an issue for the jury to decide); *Brown v. Finger,* 240 S.C. 102, 113, 124 S.E.2d 781, 786 (1962) (same).

## C. Lack of Court Reporter for Rule 59 Hearing

Dunbar asserts the trial judge erred in holding a hearing without a court reporter on her motion to alter or amend the judgment. In light of our disposition of Dunbar's other issues on appeal, we need not reach this issue.

## II. Carlson's Appeal

### Statute of Repose

■ Carlson contends the trial judge erred in denying his motions to amend his answer to assert the statute of repose and for a directed verdict on this ground. We disagree.

■ After the plaintiff had rested her case at trial, Carlson moved to amend his answer to assert the six-year statute of repose. The statute of repose is contained in § 15–3–545(A)'s provision that the action must be commenced not more than "six years from date of occurrence." Thus, the statute of repose imposes an outer limit for filing a medical malpractice action, regardless of when it is discovered. *O'Tuel v. Villani,* 318 S.C. 24, 27, 455 S.E.2d 698, 700 (Ct.App. 1995), *overruled on other grounds by I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000).

At trial, defense counsel argued there was testimony from Jablon based on his review of Dunbar's x-rays that Carlson deviated from the standard of care in 1987. As noted above,

Jablon testified he thought there was some bone loss visible in an x-ray Carlson took of Dunbar in late 1987 which would indicate the beginning stages of periodontal disease. Dunbar brought this action in 1995. Defense counsel asserted the six-year statute of repose would bar Dunbar's action because it was brought more than six years after the condition could have been diagnosed, and South Carolina does not recognize the continuous treatment rule.[1]

Dunbar first argued that defense counsel took Jablon's deposition and "[t]hey had all the information that they have here [at trial] at the time of the deposition[.]" Dunbar noted Carlson had the opportunity to move for an amendment of his answer after the deposition but failed to do so. Second, Dunbar argued that, while Jablon's testimony could fairly be interpreted to state there might have been some negligence in 1987, "there certainly was negligence in '92 and continuing on until '94 when [Dunbar] found out about it." The trial judge denied the motion to amend the pleadings to assert the statute of repose.

 Amendments to pleadings may properly be denied where "there are circumstances such as inexcusable delay, or the taking of the adverse party by surprise, or the like, which might justify a refusal to amend." *Braudie v. Richland County*, 217 S.C. 57, 59–60, 59 S.E.2d 548, 549 (1950); *see also Crowley v. Spivey*, 285 S.C. 397, 414, 329 S.E.2d 774, 784 (Ct.App.1985) (stating the decision to amend the pleadings is within the trial court's discretion, and circumstances such as inexcusable delay and surprise to the adverse party justify a refusal to amend).

---

1. Under the continuous treatment rule, "if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated." *Anderson v. Short*, 323 S.C. 522, 524, 476 S.E.2d 475, 476 (1996) (quoting Davis W. Louisell & Harold Williams, *Medical Malpractice*, ¶ 13.02[3] (1995)). Our supreme court noted in *Short* that "most courts will not apply the rule to toll the running of a statute of limitations if before treatment ends the patient discovers or should have discovered the injury giving rise to the cause of action." *Id.* at 525, 476 S.E.2d at 476. The court expressly declined to decide whether South Carolina would adopt the continuous treatment rule, finding the claim in that case would be time-barred even if the rule were applied. *Id.*

The trial judge did not abuse his discretion in denying the amendment under the circumstances present here. Although Carlson already had deposition testimony from Jablon establishing that he believed Carlson should have diagnosed Dunbar's condition as early as 1987, he did not move to amend his answer until after the plaintiff rested her case at trial. Jablon testified during his deposition that Carlson deviated from the standard of care many times during the period that Dunbar was his patient by not documenting her periodontal disease and by giving her inappropriate treatment. He also stated that he could tell periodontal disease was present in 1987 based on Carlson's file indicating Dunbar had swollen tissue and painful abscesses, and that Carlson should have treated her then for periodontal disease. Thus, the defense was well aware of this potential ground prior to trial. *See Alamance Indus. v. Chesterfield Hosiery Mill,* 239 S.C. 287, 290–91, 122 S.E.2d 648, 649 (1961) (finding no abuse of discretion to deny request to amend answer five days before trial where defendant was aware of the factual matter that was the subject of the proposed amendment from the time the suit was commenced eight months earlier). Accordingly, we conclude the trial judge did not abuse his discretion in denying Carlson's motions to amend his answer and for a directed verdict based on the six-year statute of repose.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

STILWELL, J., and MOREHEAD, Acting Judge, concur.