138

767 S.E.2d 451

Joseph D. McMASTER, Appellant,

v.

John H. DEWITT, M.D. and Carolina Psychiatric
Services, P.A., Respondents.

Appellate Case No. 2013–000717.

No. 5282.

Court of Appeals of South Carolina.

Heard Oct. 8, 2014.
Decided Dec. 3, 2014.
Rehearing Denied Jan. 27, 2015.

Charles L. Henshaw, Jr., Furr & Henshaw, of Columbia, for Appellant.

Carmelo Barone Sammataro and Robert Gerald Chambers, Jr., Turner Padget Graham & Laney, P.A., both of Columbia, for Respondent Carolina Psychiatric Services, P.A.; James Edward Bradley, John Calvin Bradley, Jr., and Margaret Amelia Hazel, Moore Taylor Law Firm, P.A., all of West Columbia, for Respondent.

FEW, C.J.

Joseph D. McMaster brought a medical malpractice claim against John H. Dewitt, M.D. and Carolina Psychiatric Services, P.A. based on Dr. Dewitt's alleged negligence in over-prescribing McMaster the drug Adderall. The circuit court granted summary judgment for both defendants, finding the statute of limitations barred McMaster's claim. We affirm.

## I. Fact and Procedural History

Dr. Dewitt treated McMaster for Adult Attention Deficit Disorder and prescribed him Adderall. On May 13, 2008, McMaster was involuntarily committed to Palmetto Health Baptist "in a delusional and paranoid state." Following his discharge on May 28, Dr. Dewitt stopped prescribing Adderall to McMaster. On June 25, 2008, McMaster was once again admitted to the hospital "in a paranoid and psychotic state."

On June 16, 2011, McMaster commenced a medical malpractice action against Dr. Dewitt and Carolina Psychiatric. He alleged Dr. Dewitt negligently overprescribed him Adderall, which led to his psychosis and subsequent hospitalization. The complaint mentioned only his June 2008 hospitalization.

During a deposition, McMaster testified Dr. Dewitt told him in May the cause of his psychosis. Specifically, McMaster stated, "[Dr. Dewitt] called it Adderall induced psychosis when I talked to [him]." When asked what Dr. Dewitt did "wrong," McMaster stated, "[H]e just gave me too much medicine. . . . I mean, it was just way too much and I didn't know it until it was too late."

Dr. Dewitt and Carolina Psychiatric moved for summary judgment. They argued McMaster's claims were barred by the statute of limitations because it began to run when McMaster was hospitalized in May 2008. *See* S.C.Code Ann. § 15-3-545(A) (2005). *See id.* (stating a medical malpractice claim "must be commenced within three years from the date of the treatment . . . giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered").

Two days before the summary judgment hearing, McMaster filed an affidavit in which he claimed he was not aware of Dr. Dewitt's negligence until June 2008. McMaster explained in his affidavit that when he was hospitalized in May, "Neither [Dr. Dewitt] nor anyone else at that time suggested that Adderall . . . had caused me to have paranoid psychosis . . . or that the amounts of Adderall . . . prescribed to me by Dr. Dewitt had caused me any harm." Instead, he claimed it was not until he learned of his diagnosis in June that he "began to question whether amphetamines such as Adderall had been overprescribed to [him]." Although he "recalled that Dr.

Dewitt's partner, Dr. Larry Nelson, had told [him] in May 2008 that Dewitt had a tendency to overprescribe amphetamines," [1] he stated, "Dr. Nelson did not tell me that [Dr.] Dewitt had overprescribed amphetamines to me or that Adderall had caused me any injury."

The circuit granted summary judgment, finding that when McMaster filed his lawsuit in June 2011, it had been "more than three years after he discovered that he was hospitalized due to the Adderall prescribed by Dr. Dewitt." The court based this finding on McMaster's deposition testimony, in which he stated Dr. Dewitt told him in May he had suffered an Adderall induced psychosis. The circuit court refused to consider the affidavit submitted by McMaster, finding it "should be disregarded" as a "sham affidavit" under *Cothran v. Brown*, 357 S.C. 210, 218, 592 S.E.2d 629, 633 (2004).

## II. Standard of Review

Summary judgment is appropriate when a plaintiff does not commence an action within the applicable statute of limitations. *See Kreutner v. David*, 320 S.C. 283, 286–87, 465 S.E.2d 88, 90 (1995) (affirming "the grant[ing] of summary judgment because the statute of limitations has expired"). In reviewing a decision to grant summary judgment, we apply the same standard as the circuit court. *Vaughan v. Town of Lyman*, 370 S.C. 436, 440, 635 S.E.2d 631, 633 (2006). Under this standard, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC v. Cnty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010) (citation omitted). "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013).

---

1. The record reflects that Adderall is an amphetamine.

■ While South Carolina courts have not established the standard for reviewing the circuit court's decision to exclude a sham affidavit, federal appellate courts use an abuse of discretion standard.[2] *See Cothran,* 357 S.C. at 218, 592 S.E.2d at 633 ("find[ing] persuasive the reasoning of federal case law" in adopting the rule that a circuit court may exclude a sham affidavit). We adopt this standard and accordingly, must determine whether the circuit court acted within its discretion in refusing to consider McMaster's affidavit.

## III. Statute of Limitations

McMaster argues the circuit court erred in granting summary judgment for two reasons: (1) a genuine issue of material fact exists regarding when he was put on notice that Dr. Dewitt acted negligently in prescribing him Adderall; and (2)

---

**2.** *See Nguyen v. Biondo,* 508 Fed.Appx. 932 (11th Cir.2013) (stating "[t]he district court also did not abuse its discretion when it struck [the] affidavit" because it "was entitled to disregard [the] affidavit as a 'transparent sham' "); *EBC, Inc. v. Clark Bldg. Sys., Inc.,* 618 F.3d 253, 270–71 (3d Cir.2010) (reviewing district court's decision to exclude an errata sheet that contradicted prior testimony and applying the "sham affidavit" rule to find district court "did not abuse its discretion in refusing to consider ... [the] contradictory errata sheet"); *Cole v. Homier Distrib. Co.,* 599 F.3d 856, 867 (8th Cir.2010) (addressing district court's decision to exclude contradictory affidavits and stating "[w]e review this holding for abuse of discretion"); *Delaware Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC,* 597 F.3d 1374, 1381–82 (Fed.Cir.2010) (holding appellant "fail[ed] to demonstrate that the district court abused its discretion in excluding" evidence that contradicted prior sworn testimony); *Wolfe v. Jarnigan,* 357 Fed.Appx. 621, 623 (6th Cir.2009) (addressing whether district court improperly considered a sham affidavit and stating "[w]e review the district court's decision to entertain or reject affidavits on this ground for abuse of discretion"); *Scottsdale Ins. Co. v. Moreno,* 133 Fed.Appx. 415, 417 (9th Cir.2005) (finding district court "abused its discretion by striking portions of [the] affidavits as shams"); *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 973 (10th Cir.2001) ("[I]t is not an abuse of discretion to conclude—as the district court did—that these subsequent affidavits ... fall within the ambit of creating a 'sham fact issue.' "); *Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049, 1055 (7th Cir.2000) ("We review a district court's decision to strike or disregard parts of an affidavit in opposition to a motion for summary judgment for an abuse of discretion."); *Torres v. E.I. Dupont De Nemours & Co.,* 219 F.3d 13, 20–21 (1st Cir.2000) (finding "no abuse of discretion" regarding "district court's decision to strike the affidavits" because they were contradictory to prior testimony and provided no explanation for the contradictions).

the affidavit he submitted two days before the summary judgment hearing was improperly excluded as a "sham." We find the circuit court properly granted summary judgment.

## A. Notice Under the Discovery Rule

Subsection 15–3–545(A) provides that a plaintiff must bring a medical malpractice claim "within three years from the date of the treatment ... giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered." We apply the discovery rule to determine when an action accrues. *Dunbar v. Carlson,* 341 S.C. 261, 266, 533 S.E.2d 913, 915–16 (Ct.App. 2000). Under the discovery rule, the statute begins to run when "the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist." *Knox v. Greenville Hosp. Sys.,* 362 S.C. 566, 570, 608 S.E.2d 459, 462 (Ct.App.2005); *see also Dunbar,* 341 S.C. at 266, 533 S.E.2d at 916.

Here, the evidence demonstrates McMaster suffered an injury in May 2008, the circumstances of which put him on notice to inquire into whether this injury gave rise to a claim against Dr. Dewitt. Dr. Dewitt prescribed McMaster Adderall to treat his attention deficit disorder, and in his deposition, McMaster testified three times he was aware in May that he was hospitalized for Adderall induced psychosis. The following is an excerpt from this deposition:

Q: [Y]ou knew that then, when you went in [to the hospital] that [Adderall] was the problem or when you got out?

A: No. I didn't know it when I went in [the hospital]. I didn't know that was the problem when I went in.

Q: But you knew it when you got out? When you talked to your boss?

A: When I talked to—talked to the doctors on the floor.

Q: Okay.

A: I mean, [Dr.] John [Dewitt] called it Adderall induced psychosis when I talked to [him].

Q: And that was in May of 2008?

A: Correct.

When asked what Dr. Dewitt did "wrong," McMaster stated, "[H]e just gave me too much medicine. . . . I mean, it was just way too much and I didn't know it until it was too late." The following exchange then took place:

Q: And that would've been when you went into the hospital in May—

A: Yeah.

Q: —of 2008?

A: Right.

. . . .

Q: And you were discharged at the end of May 2008 from the hospital?

A: May 2008. The first time, yeah.

Q: All right. And when you were discharged, did you know what was wrong with you?

A: From what I was told, it was Adderall induced psychosis.

This testimony indicates McMaster was aware in May he suffered an Adderall induced psychosis due to the medicine prescribed by Dr. Dewitt. As we will discuss, the record contains no admissible, material facts to the contrary. Thus, we find the circuit court properly granted summary judgment because the statute of limitations began to run in May 2008.

McMaster argues a question of material fact exists as to when his cause of action accrued because the discharge summary from his May hospitalization stated he was diagnosed with "[p]aranoid psychosis of unclear etiology," but the discharge summary from June contained the diagnosis: "Medication or drug induced psychosis." He contends that because the May discharge summary did not mention medication as the cause of his psychosis, there is a question of fact as to whether he was put on notice of a claim against Dr. Dewitt.

We find any conflict between the discharge summaries immaterial in light of McMaster's deposition testimony. Specifically, McMaster testified Dr. Dewitt told him in May he had "Adderall induced psychosis." McMaster certainly knew

Dr. Dewitt was the one who prescribed him Adderall. This information, regardless of the diagnoses in the discharge summaries, "would put a person of common knowledge and experience on notice . . . that some claim against [Dr. Dewitt] might exist." *Knox*, 362 S.C. at 570, 608 S.E.2d at 462.

McMaster also argues summary judgment was improper because there is evidence indicating Dr. Dewitt did not know in May that Adderall caused his hospitalization. According to McMaster, the May discharge summary, which he claims does not link his psychosis to any medication, demonstrates Dr. Dewitt did not know the cause of McMaster's injury at that time. Instead, he argues it was not until June that Dr. Dewitt determined Adderall was the cause of his psychosis, as evidenced by the diagnosis in the June discharge summary. Therefore, McMaster asserts it was not possible for him to know in May that he had suffered an Adderall induced psychosis because not even Dr. Dewitt knew the cause of his May hospitalization.

We reject this argument. First, the record does not support the assertion that Dr. Dewitt did not know the cause of McMaster's May hospitalization. McMaster testified in his deposition that Dr. Dewitt *told him* he suffered an Adderall induced psychosis in May. In addition to this testimony, medical records from McMaster's May hospitalization indicate his illness was "likely substance induced from [prescription] pills" and due to "overutilization of Adderall." Furthermore, the May discharge summary—written by Dr. Dewitt—stated, "It was felt that the patient had been overusing his Adderall . . . [and] that might have precipitated this delusional condition."

Second, even assuming McMaster's allegation regarding Dr. Dewitt's knowledge to be true, this would not give rise to a genuine issue of *material* fact. *See Town of Hollywood*, 403 S.C. at 477, 744 S.E.2d at 166 ("[I]t is not sufficient for a party to create . . . an issue of fact that is not genuine."). Dr. Dewitt's knowledge is immaterial to our determination of when the statute of limitations began to run. Instead, under the discovery rule, the focus is on what McMaster knew and when he knew it—not how and from whom he learned it—and

the record demonstrates McMaster knew the cause of his injury in May.

McMaster's argument also confuses the event that triggers the running of the statute of limitations under the discovery rule. McMaster claims the statute of limitations did not begin to run until he discovered that Dr. Dewitt's negligent conduct caused his injury. Under the discovery rule, however, the event that commences the running of the statute of limitations is the injury, *if* the facts and circumstances are such that a reasonable person would inquire into whether the injury gives rise to a claim against the defendant. *See Knox,* 362 S.C. at 570, 608 S.E.2d at 462; *see also Arant v. Kressler,* 327 S.C. 225, 229, 489 S.E.2d 206, 208 (1997) (rejecting appellant's contention that "the time of discovery is the time when the treating physician's actual negligence becomes known"). Here, the "injury" is the May hospitalization.[3] Thus, the question before us is whether "the facts and circumstances of [the May hospitalization] would put a person of common knowledge and experience on notice . . . that some claim against [Dr. Dewitt] might exist." *Id.* (citation omitted). We find as a matter of law McMaster's May hospitalization, coupled with his knowledge that it was induced by Adderall, put him on notice of a claim against Dr. Dewitt and commenced the running of the statute of limitations.

## B. Sham Affidavit

McMaster also argues the circuit court erred in granting summary judgment because it refused to consider his

---

**3.** McMaster expressly stated at the summary judgment hearing that his May and June hospitalizations constituted the same injury:

[I]t's no question that this is an entire psychotic event that is occurring . . . from May 13th all the way up until he is discharged from the second hospitalization on July 10. The fact that he was dismissed and then had to come back shortly thereafter does not mean that they are not connected and that he was not continuing to be under that disability during that entire period of time.

Under McMaster's own theory of the case, the June hospitalization was a continuation of the May injury. Thus, his May hospitalization is the relevant injury for determining when the statute of limitations began to run. *Cf. Benton v. Roger C. Peace Hosp.,* 313 S.C. 520, 523–24, 443 S.E.2d 537, 538–39 (1994) (holding that when injuries constitute two separate and distinct harms, the statute of limitations begins to run at different times for each injury).

affidavit, which contained evidence that he did not know in May he suffered a medication induced psychosis. We find the circuit court acted within its discretion.

A trial court may exclude an affidavit when it was submitted "to contradict that party's own prior sworn statement" in "an attempt to create a sham issue of material fact." *Cothran*, 357 S.C. at 218, 592 S.E.2d at 633. Our supreme court delineated the following considerations for "distinguishing between a sham affidavit and a correcting or clarifying affidavit":

(1) whether an explanation is offered for the statements that contradict prior sworn statements; (2) the importance to the litigation of the fact about which there is a contradiction; (3) whether the nonmovant had access to this fact prior to the previous sworn testimony; (4) the frequency and degree of variation between statements in the previous sworn testimony and statements made in the later affidavit concerning this fact; (5) whether the previous sworn testimony indicates the witness was confused at the time; (6) when, in relation to summary judgment, the second affidavit is submitted.

*Id.*

The circuit court listed these six considerations in its order and made findings to support its ruling. First, the court found McMaster "has not offered an explanation for his contradictory statements." We agree and find this consideration weighs in favor of excluding the affidavit. A deponent "cannot create a conflict and resist summary judgment with an affidavit that ... does not give a satisfactory explanation of why the testimony is changed." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20 (1st Cir.2000) (citation omitted). Explanations that may be satisfactory include the need to correct misstatements made during the deposition, *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705 (3d Cir.1988), to "elaborate[ ] upon or clarif[y] information already submitted," *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 867 (8th Cir.2010), and to alter testimony based on the discovery of new evidence, *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir.2001). McMaster's affidavit contains no justification. In fact, the affidavit makes no reference to

his deposition testimony at all. *See Torres,* 219 F.3d at 20–21 (affirming decision to strike contradictory affidavit because it provided no explanation and made "no reference to the contrary statements in [the] deposition at all").

McMaster contended in his Rule 59(e), SCRCP, motion and argues on appeal the circuit court erred in finding he offered no explanation because Dr. Dewitt "could not have told him a diagnosis of 'drug induced psychosis' until at least June 25, 2008" based on the diagnoses in the May and June discharge summaries. This assertion, with no accompanying allegation that his prior testimony was in error, does not explain why McMaster's testimony was contradictory. Because McMaster has provided no explanation for his contrary statements, we find the record supports the circuit court's finding as to this consideration.

The second *Cothran* consideration requires the circuit court to take into account "the importance to the litigation of the fact about which there is a contradiction." 357 S.C. at 218, 592 S.E.2d at 633. Under this consideration, the more important the fact contradicted by the affidavit is to the outcome of litigation, the more likely a circuit court will be justified in refusing to consider the affidavit. *See Ralston,* 275 F.3d at 973 (finding affidavit was a sham when it contradicted deposition testimony that was "detrimental to [plaintiff]'s sole remaining cause of action"); *Martin,* 851 F.2d at 705–06 (disregarding affidavit because the contradictory fact contained in the affidavit was "of considerable importance" to the litigation). The circuit court found "the date on which [McMaster] had notice of his claim is a central issue in this case." We agree. The statements in the affidavit claiming McMaster did not know in May that he suffered a medication induced psychosis directly contradict his prior testimony on a fact that is pivotal to whether the statute of limitations bars his claim. This consideration weighs in favor of excluding the affidavit.

Regarding the third *Cothran* consideration—"whether the nonmovant had access to this fact prior to the previous sworn testimony," 357 S.C. at 218, 592 S.E.2d at 633—the circuit court did not make a specific finding. However, it is obvious McMaster "had access" to this information because it was

within his own personal knowledge. Thus, this consideration weighs in favor of excluding the affidavit.

As to the fourth consideration—"the frequency and degree of variation between" the deposition testimony and the statements in the affidavit, *id.*—the court found the "testimony in his prior deposition varies greatly from the statements in his affidavit." The record supports this finding. McMaster testified three times he knew in May that he was hospitalized for Adderall induced psychosis, and he never expressed doubt during the deposition as to when he learned this. Because his statement in the affidavit—"Neither [Dr. Dewitt] nor anyone else at that time [in May] suggested that Adderall or other medications had caused me to have paranoid psychosis"—directly contradicts his deposition testimony, this consideration weighs in favor of excluding the affidavit.

Regarding the court's finding as to the fifth consideration—"[t]here has been no indication that [he] was confused during his deposition"—McMaster asserts that on several occasions during his deposition, he stated his "memory was faulty," which he argues is adequate to show he was confused at the time. We decline to address this argument because McMaster did not assert to the circuit court that this portion of his deposition indicated he was confused. *See Hill v. S.C. Dep't of Health & Envtl. Control,* 389 S.C. 1, 21, 698 S.E.2d 612, 623 (2010) (stating "a matter may not be raised for the first time on appeal"). Additionally, the record on appeal does not include the portions of McMaster's deposition testimony in which he supposedly made these statements. *See* Rule 210(h), SCACR ("[T]he appellate court will not consider any fact which does not appear in the Record on Appeal.").

Finally, McMaster submitted the affidavit containing this new information "two days before [the motion for summary judgment] was scheduled to be heard." The last-minute submission of the affidavit indicates McMaster was attempting to create an issue of fact for purposes of summary judgment. *See City of St. Joseph, Mo. v. Sw. Bell Tel.,* 439 F.3d 468, 476 (8th Cir.2006) ("The timing of the affidavit . . . indicate[s] that the [plaintiff] engaged in a last-minute effort to create a genuine issue of material fact to prevent the . . . entry of summary judgment in [the defendant]'s favor."). This consideration weighs in favor of excluding the affidavit.

We find the circuit court acted within its discretion in refusing to consider the affidavit. The evidence in the record supports the circuit court's findings as to each applicable consideration, and those findings support the court's conclusion that the affidavit was submitted in "an attempt to create a sham issue of material fact." *Cothran*, 357 S.C. at 218, 592 S.E.2d at 633.

## IV. Conclusion

We find the circuit court properly granted summary judgment because there was no genuine issue of material fact regarding whether McMaster's claims were untimely under the applicable statute of limitations.[4] Thus, the order of the circuit court is **AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.

---

4. We decline to address McMaster's argument that summary judgment was inappropriate as to Carolina Psychiatric due to its failure to plead the statute of limitations as an affirmative defense. McMaster did not raise this argument to the trial court. *See Hill*, 389 S.C. at 21, 698 S.E.2d at 623.