**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Angela Patton, as Next Friend of Alexia L., a minor, Respondent,

v.

Dr. Gregory A. Miller and Rock Hill Gynecological & Obstetrical Associates, P.A., Appellants.

Appellate Case No. 2022-000288

———————

Appeal From York County
William A. McKinnon, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-253
Heard June 3, 2025 – Filed July 23, 2025

———————

**AFFIRMED**

———————

C. Mitchell Brown, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, and Ashby W. Davis, of Davis and Snyder, P.A., of Greenville, both for Appellants.

Edward L. Graham, of Graham Law Firm, P.A., of Pendleton, and David Bradley Jordan, of Jordan Law Firm, P.C., of Rock Hill, both for Respondent.

———————

**PER CURIAM:**  This dispute arises out of a claim for medical malpractice during the delivery of a child.  Dr. Gregory Miller and his practice were the defendants below and are the appellants here.  For ease of reference, we refer to both as "Dr. Miller."  Dr. Miller contends he is entitled to a new trial because the circuit court erred in denying his mid-trial motion to amend his pleadings to add a statutory defense.  Dr. Miller made the motion to amend after Respondent Angela Patton rested her case.  Dr. Miller also asserts he is entitled to a new trial because the trial judge allegedly erred in not recusing himself from the case.  We respectfully disagree with both arguments and affirm.

## STANDARD OF REVIEW

"The decision whether to allow the amendment of pleadings to conform to the evidence is left to the sound discretion of the trial court."  *Dunbar v. Carlson*, 341 S.C. 261, 266, 533 S.E.2d 913, 916 (Ct. App. 2000).  "The trial judge's finding will not be overturned without an abuse of discretion or unless manifest injustice has occurred."  *Berry v. McLeod*, 328 S.C. 435, 450, 492 S.E.2d 794, 802 (Ct. App. 1997).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support."  *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

"Under South Carolina law, if there is no evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal."  *Patel v. Patel*, 359 S.C. 515, 524, 599 S.E.2d 114, 118 (2004).

## MOTION TO AMEND

Dr. Miller contends the circuit court erred in denying his Rule 15(b), SCRCP, motion to amend to add a statutory emergency defense under section 15-32-230(A) of the South Carolina Code (Supp. 2024).  When ruling on the motion, the circuit court explained that it was unreasonable to allow Dr. Miller to amend his pleadings in a way that would potentially change the burden of proof while the parties were in the second week of trial, after Respondent concluded her case.  We agree.

Rule 15(b), SCRCP, allows a party to amend his or her pleadings to conform to the evidence "if an issue not raised by the pleadings is tried by express or implied consent of the parties."  *Dunbar*, 341 S.C. at 266–67, 533 S.E.2d at 916 (quoting *Sunvillas Homeowners Ass'n., v. Square D Co.*, 301 S.C. 330, 334, 391 S.E.2d 868, 871 (Ct. App. 1990)).  "Although the spirit of the modern procedural rules is to promote pleading flexibility to ensure disputes are decided on their merits rather than

the whims of formalism, Rule 15(b) reminds us that pleading is not altogether formless, and issues cannot enter a trial by stealth." *Northwest Props., LLC v. Strebler*, 424 S.C. 617, 626, 819 S.E.2d 154, 159 (Ct. App. 2018). "[I]f late amendment of the pleadings would cause prejudice to the opposing party, the court should either deny the amendment or grant a continuance reasonably necessary to allow the opposing party to meet the amendment." *Ball v. Canadian AM. Exp. Co.*, 314 S.C. 272, 275, 442 S.E.2d 620, 622 (Ct. App. 1994). "Prejudice occurs when the amendment states a new claim or defense which would require the opposing party to introduce additional or different evidence to prevail in the amended action." *Id.*

We recognize that this trial included extensive testimony that shoulder dystocia is an obstetrical emergency; however, the record plainly shows that neither party attempted to present or develop expert testimony on whether Dr. Miller was grossly negligent. *See* § 15-32-230(A) (providing a statutory obstetrical emergency defense that requires a finding of gross negligence before liability can be imposed on a physician). The relevant testimony leading up to Dr. Miller's motion to amend focused almost exclusively on whether Dr. Miller's treatment conformed to the degree of care and skill employed by an ordinarily careful and prudent physician under similar circumstances. We respectfully disagree with Dr. Miller's argument that the statute at issue here, and particularly the issue of gross negligence, was tried by consent. Neither party offered testimony targeting the issues in the statute beyond whether shoulder dystocia was an emergency. Again, we interpret the relevant testimony as being targeted to the general standard of care rather than the issues related to the requested statutory defense.

In *Dunbar*, the defendant questioned the plaintiff's daughter "extensively about her mother's health and the time frame for her various illnesses." 341 S.C. at 268, 533 S.E.2d at 917. The plaintiff did not object to the questions or the daughter's subsequent testimony. *Id.* at 267, 533 S.E.2d at 916. The plaintiff "rested her case after this testimony." *Id.* at 265, 533 S.E.2d at 915. Based on the daughter's answers to his questions, the defendant "then moved to amend his answer to allege the defenses of the statute of repose and the statute of limitations and for a directed verdict on those grounds." *Id.* The circuit court in that case granted the "motion as to the statute of limitations and granted a directed verdict to [the defendant] on that ground." *Id.* On appeal, this court found that the statute of limitations was not tried by implied consent because questions regarding the timing of the illnesses were admissible for another purpose, to establish proximate cause, and thus it appeared the plaintiff would not have recognized an intent to assert a statute of limitations defense. *Id.* at 268, 533 S.E.2d at 917.

As previously mentioned, the relevant part of section 15-32-230(A) requires gross negligence before liability can be imposed on a physician if there is a genuine emergency in an obstetrical suite. § 15-32-230(A) ("In an action involving a medical malpractice claim arising out of care rendered in a genuine emergency situation involving an immediate threat of death or serious bodily injury to the patient receiving care in an emergency department or in an obstetrical or surgical suite, no physician may be held liable unless it is proven that the physician was grossly negligent."). Like the testimony regarding the statute of limitations in *Dunbar*, the testimony regarding the existence of an obstetrical emergency was admissible for other purposes and did not point conclusively to the statutory defense Dr. Miller claims was tried by consent. The parties used this testimony to establish the general facts and circumstances Dr. Miller faced during the delivery. Also like the defendant in *Dunbar*, Dr. Miller obtained a directed verdict on gross negligence after Respondent rested her case and immediately afterwards attempted to assert the emergency statute as an affirmative defense. Like the court in *Dunbar*, we find that allowing this amendment after Respondent rested would have been manifestly prejudicial because Respondent's lawsuit would no longer be viable if the jury found there was a genuine emergency. *Dunbar*, 341 S.C. at 267, 533 S.E.2d at 916 ("The prejudice to Dunbar is patent in that the trial judge granted a directed verdict against Dunbar immediately after permitting Carlson's amendment."). This is especially true when Dr. Miller obtained a directed verdict on the issue of gross negligence immediately before moving to amend his answer to assert the affirmative defense.

We take Dr. Miller's point that everyone was aware of the potential for this statute to become an issue in this case, and that if the decision denying the motion to amend stands, it makes no sense for the case to have been stayed while other cases involving the statute worked through the appellate process. This is a strong argument, but it is meaningfully countered by the fact that the burden fell on Dr. Miller to amend his pleadings if he wanted to make the defense an actual issue in the case as opposed to a potential issue. By waiting until after Respondent rested, Dr. Miller raised a risk of prejudice that would not have been present if the motion had been made earlier.

Therefore, the circuit court did not abuse its discretion in finding the amendment would be unfairly prejudicial to Respondent. *See Ball*, 314 S.C. at 275, 442 S.E.2d at 622 ("Prejudice occurs when the amendment states a new claim or defense which would require the opposing party to introduce additional or different evidence to prevail in the amended action.").

**RECUSAL**

Dr. Miller claims the circuit court judge erred in failing to recuse himself because the judge had previously litigated medical malpractice cases when he was in private practice. We respectfully disagree and find the record does not contain evidence establishing judicial bias, which is required for reversal.

"Pursuant to Canon 3(E)(1)(a) of Rule 501, SCACR, a judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." *State v. Jackson*, 353 S.C. 625, 627, 578 S.E.2d 744, 745 (Ct. App. 2003). "It is not enough for a party seeking disqualification to simply allege bias or prejudice. The party must show some evidence of that bias or prejudice." *Id.* "If there is no evidence of judicial bias or prejudice, a judge's failure to disqualify himself will not be reversed on appeal." *Id.*; *see also Simpson v. Simpson*, 377 S.C. 519, 534, 660 S.E.2d 274, 277 (Ct. App. 2008) ("When an appellant offers no evidence to support his claim of partiality, the trial judge is correct to deny a Motion for Recusal.").

Specifically, Dr. Miller argues the trial judge should have recused himself because while he was a partner at his former firm, the judge's law partners litigated a medical malpractice claim arising from allegedly negligent obstetrical care against the same medical practice while Dr. Miller was a partner there. These are not grounds for recusal, especially when the judge's former law firm was not involved in this case. *See Jackson*, 353 S.C. at 627, 578 S.E.2d at 745 (affirming the denial of a motion for recusal because "[t]he fact that the trial judge in this case was a deputy solicitor at the time Jackson allegedly committed the crime did not automatically warrant his recusal from the case without more"); *see also Simpson*, 377 S.C. at 521–26, 660 S.E.2d at 276–78 (finding the trial judge was not required to recuse herself in a divorce proceeding when wife's counsel had tried an unrelated personal injury case with the judge's husband's law partner and that law partner had testified on behalf of husband's parents in a prior divorce action). When ruling on the motion, the judge here stated, "I don't ever recall having contact with Dr. Miller either as an expert in one of my cases or ever having worked a case against that medical practice." Dr. Miller's counsel confirmed that the judge's recollection was correct. Therefore, we find the circuit court appropriately denied the motion for recusal because there was no evidence of judicial bias or prejudice.

Dr. Miller argues the decision denying his motion to amend his answer constitutes evidence of bias. Given our conclusion that the motion to amend was properly denied, we maintain the view that the record contains no evidence of judicial bias. For these reasons, the circuit court's judgment is

**AFFIRMED.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**