**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Pamela Holliday Wallin, Mark Bennett Holliday, Kingsley K. Holliday, Sara Jane Holliday, and John C. Holliday, Appellants,

v.

Ross Samuel Holliday, Personal Representative of the Estate of Warren Phillip Holliday, Ross Samuel Holiday, individually, Warren Lea Holliday, Individually, 2233 Highway 17 North, LLC, 2237 Highway 17 North, LLC, 2805 Highway 17 North, LLC, 1606 Meeting Street, LLC, Bacons Bridge Road, LLC, 4687 Franchise Street, LLC, Zeezrom Properties, LLC, John Doe Leased Vehicle, 1905 North Main Street, Summerville, LLC, 815 Folly Road, LLC, 832 Coleman Blvd, LLC, 2189 Discher Avenue, LLC, New Space Science, LLC, Pirates Plunder, LLC, Sawgrass Technologies, Inc., Holliday Amusement Company, Inc., and the Revocable Trust Agreement Between Warren P. Holliday as Settlor and as Trustee, Respondents.

Appellate Case No. 2022-000592

———

Appeal From Charleston County
Bentley Price, Circuit Court Judge

———

Unpublished Opinion No. 2025-UP-322
Heard December 4, 2024 – Filed September 24, 2025

———

**REVERSED AND REMANDED**

Daniel Scott Slotchiver and Stephen Michael Slotchiver, both of Slotchiver & Slotchiver, LLP, of Mount Pleasant; Brent Souther Halversen, of Halversen & Halversen, LLC, of Mount Pleasant; Michael A. Timbes and Sarah D. Baum, of Thurmond, Kirchner & Timbes, P.A., of Charleston, all for Appellants.

Alice F. Paylor, of Saxton & Stump, LLC, of Mount Pleasant; and Bijan Khaladj-Ghom, of Saxton & Stump, LLC, of Charleston, both for Respondents.

**PER CURIAM:** Pamela Holliday Wallin (Pamela) and Mark Bennett Holliday (Mark) (collectively, Older Children), along with Mark's children, appeal orders of the circuit court, arguing the court erred in granting summary judgment to their siblings, Ross Samuel Holliday (Ross) and Warren Lea Holliday (Lea) (collectively, Younger Children),[1] on their challenge to the validity of the revocation of their father's, Warren Phillip Holliday (Decedent), trust and on their other claims for relief. We reverse the grant of summary judgment and remand the matter to the circuit court.

This appeal involves a revocable trust (the trust) created by Decedent. Decedent was married to Patricia Holliday (Wife) for approximately fifty years, and during their marriage, they had four children—Pamela, Mark, Ross, and Lea.

Decedent executed a revocable trust in October 2008, which provided that upon his death, Decedent's assets would pass to Wife during her lifetime. Following her death, the trust assets would pass to the four children in equal shares. The assets of the trust were estimated to be worth around twenty million dollars, consisting of various real estate and business holdings of Decedent. Article 3 of the trust expressly reserved the right for Decedent to revoke the trust, providing, "The Settlor shall have and possess, and hereby reserves the right to revoke this Trust . . . without the consent of the Trustee, or any beneficiary . . . ."

---

[1] Numerous businesses owned by the decedent also join Ross and Lea as respondents.

In 2012, Ross became the trustee; Ross also primarily managed Decedent's numerous businesses. In 2013, Decedent and Wife divorced, and the family court issued a final order and divorce decree incorporating a settlement agreement. The settlement agreement provided that Wife's support would be paid by Zeezrom Properties, LLC—an asset of the trust. The divorce was contentious, resulting in strained relationships between Decedent, Wife, and their children. Following the divorce, Decedent remained close with Younger Children, and Wife remained close with Older Children.

On March 21, 2014, Decedent executed a will (the 2014 Will), distributing his estate to the four children in varying shares.[2] Pursuant to the 2014 Will, Ross was to receive 40% of the estate, Lea was to receive 40%, Mark was to receive 15%, and Pamela was to receive 5%. On January 7, 2016, Decedent executed a codicil (the Codicil) to the 2014 Will, which provided specific bequests of $300,000 to Mark and $100,000 to Pamela. The Codicil further provided Younger Children would receive the remainder of Decedent's estate in equal shares. Decedent's probate documents were prepared by his longtime attorney, Truett Nettles (Attorney Nettles). The 2014 Will and the Codicil named Ross as the personal representative for Decedent's estate. Neither the 2014 Will nor the Codicil referenced the trust.

Decedent executed a revocation to the trust (the Revocation) a few weeks before his death in September 2016. Attorney Nettles; Aliecia Bores, an associate of Attorney Nettles's firm; and Greg Bosch, Decedent's personal trainer, all witnessed the Revocation.[3] Anticipating future probate disputes, Decedent specifically requested Bosch stay following a training session to witness the Revocation.

Decedent died on September 28, 2016. Pamela and Mark were with Decedent at the time of his death. As the personal representative, Ross distributed the devises of money to Older Children and the remainder of the assets to Younger Children.

On September 19, 2018, Older Children[4] filed this action in the probate court, seeking to set aside the Revocation; they also asserted claims for constructive trust,

---

[2] Decedent divorced his wife after the creation of the trust but before the execution of the 2014 Will.

[3] At the time of the Revocation, Bosch had been Decedent's personal trainer for two years.

[4] Mark's children, Decedent's grandchildren, also were parties to the action.

undue influence, breach of fiduciary duty, declaratory relief, an accounting and receivership, and intentional interference with inheritance.  Younger Children moved to remove the matter to the circuit court, which the probate court granted.  Younger Children then filed an amended answer and counterclaims.  In June 2020, Younger Children moved for summary judgment.  Following discovery and two hearings, the circuit court issued an order on March 3, 2022, granting summary judgment to Younger Children on Older Children's challenge to the validity of the Revocation and their remaining claims for relief.  Older Children filed a Rule 59(e), SCRCP, motion, which the circuit court denied.  This appeal followed.

## LAW/ANALYSIS

This court reviews a grant of summary judgment under the same standard applied by the circuit court under Rule 56(c), SCRCP.  *Loflin v. BMP Dev., LP*, 427 S.C. 580, 588, 832 S.E.2d 294, 298–99 (Ct. App. 2019), *aff'd as modified on other grounds*, 432 S.C. 246, 851 S.E.2d 713 (2020).  Pursuant to Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "Thus, the appellate court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party."  *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 240, 672 S.E.2d 799, 802 (Ct. App. 2009).  "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine."  *McMaster v. Dewitt*, 411 S.C. 138, 143, 767 S.E.2d 451, 453–54 (Ct. App. 2014) (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)).

## STATUTE OF LIMITATIONS

The circuit court found the statute of limitations imposed by section 62-7-604(a) of the South Carolina Code (2022) barred Older Children's claims for relief.  This was error.  Section 62-7-604(a) provides:

> A person must commence a judicial proceeding *to contest the validity of a trust* that was revocable at the settlor's death within the earlier of: (1) one year after the settlor's death; or (2) one hundred twenty days after the trustee sent the person a copy of the trust instrument and a notice informing the person of the trust's existence, of

the trustee's name and address, and of the time allowed
for commencing a proceeding.

§ 62-7-604(a) (emphasis added).  "The primary rule of statutory construction is to ascertain the intent of the General Assembly."  *S.C. Pub. Int. Found. v. Calhoun Cnty. Council*, 432 S.C. 492, 497, 854 S.E.2d 836, 838 (2021).  "Whe[n] the statute's language is plain, unambiguous, and conveys a clear, definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."  *Id.* (quoting *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 342, 713 S.E.2d 278, 283 (2011)).  The plain language of section 62-7-604(a) addresses *only* actions to contest the validity of a trust; it does not contain language incorporating actions challenging trust revocations.  Here, Younger Children are seeking a declaration that the trust is valid, rather than contesting the validity of a trust in place.  These are two different scenarios.  *See* § 62-7-604 (noting in the Reporter's Comment that "[a] 'contest' is an action to invalidate all or part of the terms of the trust or of property transfers to the trustee" and "[a]n action against a beneficiary or other person for intentional interference with an inheritance or gift, not being a contest, is not subject to this section").  Thus, we hold the circuit court erred in finding the statute of limitations barred Older Children's claims.

**TESTAMENTARY CAPACITY & UNDUE INFLUENCE**

The circuit court also found summary judgment was proper because Decedent had testamentary capacity and was not subject to undue influence.  Upon review of the record, we find Older Children have established that genuine issues of fact exist as to whether Decedent lacked testamentary capacity and whether Ross exerted undue influence upon Decedent.

"In order to invalidate a will, a testator's insanity should be established at the time of execution, *unless the insanity is of a permanent or chronic nature*."  *Hairston v. McMillan*, 387 S.C. 439, 445, 692 S.E.2d 549, 552 (Ct. App. 2010) (emphasis added).  Here, the testimony of Dr. Collins raises an issue of fact as to whether Decedent possessed the requisite testamentary capacity to execute the revocation due to chronic dementia.  Dr. Collins testified that Decedent suffered from longstanding dementia.  Viewing the evidence in the light most favorable to the non-moving parties, we find summary judgment was improper as to testamentary capacity.

"[T]he standard of proof in an undue influence case is unmistakable and convincing evidence . . . ."  *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 218,

578 S.E.2d 329, 334 (2003). Younger Children concede that a fiduciary relationship existed between Ross and Decedent. "The existence of a fiduciary relationship between the influencer and the [testator] creates a rebuttable presumption of undue influence." *Gunnells v. Harkness*, 431 S.C. 116, 123, 847 S.E.2d 97, 100 (Ct. App. 2020). "[A]lthough the proponents of the will must present evidence in rebuttal [when a fiduciary relationship exists], they do not have to affirmatively disprove the existence of undue influence. Instead, the contestants of the will still retain the ultimate burden of proof to invalidate the will." *Id.* (alterations in original) (quoting *Howard v. Nasser*, 364 S.C. 279, 288, 613 S.E.2d 64, 68–69 (Ct. App. 2005)). "A contestant must show that the influence was brought directly to bear upon the testamentary act." *Hairston*, 387 S.C. at 447, 692 S.E. 2d at 553 (quoting *Mock v. Dowling*, 266 S.C. 274, 277, 222 S.E.2d 773, 774 (1976)). "General influence is not enough." *Id.* (quoting *Mock*, 266 S.C. at 277, 222 S.E.2d at 774).

We find Younger Children failed to sufficiently rebut the presumption of undue influence, rendering summary judgment improper. The conflicting testimony of Attorney Nettles and other parties in relation to Ross's involvement with and orchestration of the signing of the revocation raises multiple genuine issues of fact as to whether Decedent was unduly influenced by Ross to sign the revocation. At a 2015 Rule to Show Cause hearing, Attorney Nettles stated Decedent did not "personally run the business or write the checks or make business decisions. And given his age and condition he probably doesn't know the answers to any questions . . . ." Further, in 2016, Attorney Nettles sent an email to Ross asking "How is Warren doing today? I discussed the trust revocation with [] as you requested . . . . call me about having Warren execute this document." Ross stated at his deposition that Attorney Nettles was his attorney. At the signing of the revocation, Decedent asked Bosch to stay in the room to witness his signature and "tell them that this is my signature and that this is what I want." However, Bosch testified that Ross was just outside the room and Bosch recalled seeing Ross at Decedent's condo only two times in the two years that Bosch worked with Decedent. Ross stated he was in the condo during the signing of the revocation but only because he had come into town to spend time with Decedent, who was nearing the end of life.

Based on the foregoing, we find summary judgment was improper, and we **REVERSE** and **REMAND** to the circuit court for further proceedings.

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**