691 S.E.2d 158

**SEA COVE DEVELOPMENT, LLC, Appellant,**

v.

**HARBOURSIDE COMMUNITY BANK and Harbourside Mortgage Company, Respondents.**

**No. 26789.**

Supreme Court of South Carolina.

Heard Feb. 4, 2010.

Decided March 22, 2010.

Rehearing Denied April 23, 2010.

96

W.H. Bundy, Jr. and M. Brent McDonald, both of Smith, Bundy, Bybee & Barnett, of Mt. Pleasant, for Appellant.

Ehrick K. Haight, Jr. and Philip J. Rios, both of Minor Haight & Arundell, of Hilton Head, for Respondents.

Justice BEATTY.

Sea Cove Development, LLC (Sea Cove) brought this action for breach of contract and promissory estoppel against Harbourside Community Bank and Harbourside Mortgage Company (Harbourside) after its loan application was denied.[1] The circuit court granted summary judgment to Harbourside, finding Sea Cove's claims were barred by S.C.Code Ann. § 37–10–107 (2002), commonly referred to as the lender stat-

---

1. References in the record indicate Harbourside Community Bank was formerly known as Harbourside Mortgage Company.

ute of frauds, which prohibits certain legal and equitable actions arising out of the loan of money where there is no writing evidencing the parties' alleged agreement. Sea Cove appeals, challenging the constitutionality of section 37–10–107 and its application here. We affirm.

## I. FACTS

■ The facts, in the light most favorable to Sea Cove, are as follows.[2] Sea Cove is a limited liability company formed by Robert J. Lohman and Grant P. Evans in December 2003. On or about February 17, 2006, Sea Cove entered into a contract to purchase property at 21 Jacana Street on Hilton Head Island for $1.45 million. Sea Cove intended to replace the existing home on the property with a beach house that it hoped to sell for over $3 million. The closing date for the purchase was set for May 17, 2006.

### Loan Application Process

In February 2006, Sea Cove (with Lohman and Evans acting as personal guarantors) applied for a $2.4 million, twelve-month, speculative construction loan from Harbourside to finance the purchase of the property and the anticipated construction. Harbourside was already the lender for Sea Cove on another project on Hilton Head Island. Harbourside was aware of the proposed closing date for the property.

By identical letters dated February 24, 2006, Harbourside wrote separately to Lohman and to Evans, advising them that they were "conditionally qualified for the mortgage loan" and that "[t]his prequalification will expire on May 15, 2005 [sic] and your interest rate will float until closing documents are prepared or you contact your Loan Officer to lock your interest rate by executing a Rate Lock Agreement."

Harbourside further advised that the prequalification was subject to (1) receipt of all necessary documentation verifying the information upon which the conditional qualification was based, (2) a satisfactory appraisal, and (3) clear title. Har-

---

2. On appeal from an order granting summary judgment, the evidence and all reasonable inferences should be viewed in the light most favorable to the non-moving party. *Hancock v. Mid–South Mgmt. Co.,* 381 S.C. 326, 673 S.E.2d 801 (2009).

bourside noted that additional information could be required before final approval. The letters were signed by Ed Brown, who identified himself as Harbourside's president.

A loan processor with Harbourside, Kristen Toho, subsequently sent Lohman a "Conventional Loan Pre–Approval Needs List" on March 7, 2006, which listed specific items that needed to be submitted or verified, such as documents verifying income. The notice included the following statement: "These Verification Requirements are needed to complete the full approval process for this loan. Any delays in returning the requested documents in their entirety may delay your loan closing." Lohman sent the requested information to Harbourside the same day.

On March 12, 2006, Evans signed a one-page "Application Disclosure" provided by Harbourside, which informed him of an "appraisal and credit report fee" and noted: "Any responses to the applicant's inquiries DO NOT constitute a commitment to make a mortgage nor do they constitute guarantee of any terms of the mortgage loan."

According to Evans, on the day before the scheduled closing date for purchase of the property, he contacted Harbourside to determine the status of the loan and was informed that the loan application had been denied. Approximately a week later, Lohman and Evans each received a separate "Statement of Credit Denial, Termination, or Change" from Harbourside dated May 22, 2006, which stated the loan was being denied for the following reasons: (1) "[i]ncome insufficient for amount of credit requested," and (2) "[e]xcessive obligations in relation to income."

Sandy Harp, formerly the Quality Control and Loan Compliance Manager for Harbourside, confirmed in her affidavit that the loan application was denied due to insufficient income and unfavorable debt to income ratios; further, she stated the loan also would have been denied based on an unsatisfactory appraisal value for the property (consisting of the site plus construction), which was found to be $2.5 million, some $700,000 less than Sea Cove's projected value of $3.2 million.

### Sea Cove's Complaint

Sea Cove filed this action for breach of contract and promissory estoppel against Harbourside on November 8, 2007 as a

result of Harbourside's denial of the loan application. Sea Cove asserted that it had a loan agreement with Harbourside and that it had forfeited its deposits and incurred expenses based on assurances from Harbourside personnel that the loan had been approved.

Harbourside denied the allegations and moved for summary judgment on three grounds: (1) Sea Cove's claims are barred by section 37–10–107 because there is no required writing evidencing a promise, undertaking, accepted offer, commitment, or agreement between the parties; (2) there is no genuine issue of material fact supporting Sea Cove's claim of a loan commitment by Harbourside; and (3) there is no genuine issue of material fact by which Sea Cove can establish that Harbourside's authority to approve the loan could come from anyone or anything other than the organization's loan committee.

By order filed October 9, 2008, the circuit court granted summary judgment to Harbourside based solely on the first ground, finding as a matter of law that Sea Cove's claims were barred by the provisions of section 37–10–107. The circuit court specifically stated there was no need for it to look beyond the first ground in granting the motion. Sea Cove filed a Rule 59(e), SCRCP motion to alter or amend the judgment, which the circuit court denied. Sea Cove appeals.

## II. STANDARD OF REVIEW

■ Rule 56(c) of the South Carolina Rules of Civil Procedure provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 386 S.C. 108, 114, 687 S.E.2d 29, 32 (2009) (citing *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)).

## III. LAW/ANALYSIS

### A. Constitutionality of Section 37–10–107

Sea Cove first asserts the circuit court erred in concluding section 37–10–107 is constitutional, arguing the statute violates Article III, section 17 of the South Carolina Constitution.

Article III, section 17 (entitled "One subject") provides that "[e]very Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." S.C. Const. Art. III, § 17. The objectives of Article III, section 17 are "(1) to apprise the members of the General Assembly of the contents of an act by reading the title; (2) to prevent legislative 'log-rolling'; and (3) to inform the people of the State of the matters with which the General Assembly concerns itself." *Am. Petroleum Inst. v. South Carolina Dep't of Revenue*, 382 S.C. 572, 576, 677 S.E.2d 16, 18 (2009).[3]

"The mandate of the Constitution is complied with if the title states the general subject of [the] legislation, and the provisions in the body of the act are germane thereto as means to accomplish the objects expressed in the title." *Poulnot v. Cantwell*, 129 S.C. 171, 177, 123 S.E. 651, 653 (1924) (citation omitted).

"Article III, § 17 does not preclude the legislature from dealing with several branches of one general subject in a single act." *Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 102 (1996). "It is complied with if the title of an act expresses a general subject and the body provides the means to facilitate accomplishment of the general purpose." *Id.* at 87, 470 S.E.2d at 102.

Article III, section 17 is to be liberally construed so as to uphold an act if practicable, and doubtful or close cases are to be resolved in favor of upholding the act's validity. *Giannini v. South Carolina Dep't of Transp.*, 378 S.C. 573, 585, 664 S.E.2d 450, 456 (2008). However, it should not be construed

---

**3.** "Log rolling" is a term used for the legislative practice of including several propositions in one measure so that the legislature will pass all of them, even though the propositions might not have passed if they had been submitted separately. *Id.* at 577, 677 S.E.2d at 18 (citing *Black's Law Dictionary* 849 (7th ed. 1999)).

so liberally as to foster the abuses that its provisions are designed to prevent. *Maner v. Maner*, 278 S.C. 377, 382, 296 S.E.2d 533, 536 (1982).

■ In this case, Sea Cove contended section 37–10–107 violates Article III, section 17 because, although the statute is in the Consumer Protection Code, it has no relation to protecting consumers and is really a statute of frauds provision that protects banks.

Section 37–10–107 precludes certain actions regarding loans for money where there is no writing evidencing the alleged promise or agreement. It provides in relevant part:

(1) *No person may maintain an action for legal or equitable relief or a defense based upon a failure to perform an alleged promise,* undertaking, accepted offer, commitment, *or agreement:*

(a) *to lend or borrow money*;

(b) to defer or forbear in the repayment of money; or

(c) to renew, modify, amend, or cancel a loan of money or any provision with respect to a loan of money, *involving in any such case a principal amount in excess of fifty thousand dollars, unless the party seeking to maintain the action or defense has received a writing from the party to be charged containing the material terms and conditions of the promise, undertaking, accepted offer, commitment, or agreement and the party to be charged, or its duly authorized agent, has signed the writing.*

(2) Failure to comply with subsection (1) precludes an action or defense based on any of the following legal or equitable theories:

(a) an implied agreement based on course of dealing or performance or on a fiduciary relationship;

(b) promissory or equitable estoppel;

(c) part performance, except to the extent that the part performance may be explained only by reference to the alleged promise, undertaking, accepted offer, commitment, or agreement; or

(d) negligent misrepresentation.

S.C.Code Ann. § 37–10–107 (2002) (emphasis added). Subsection (3) of the statute further provides for certain exclusions,

stating the statute does not apply to, among other things, personal loans and lines of consumer credit:

> (3) Subsections (1) and (2) do not apply to:
>
>> (a) a loan of money used primarily for personal, family, or household purposes;
>>
>> (b) an agreement or change in the terms of an agreement relating to a line of consumer credit, lender credit card, or similar arrangement;
>>
>> (c) an overdraft on a demand deposit or other bank account; or
>>
>> (d) promissory notes, real estate mortgages, security agreements, guaranty and surety agreements, and letters of credit.

*Id.* § 37–10–107(3).

The circuit court found section 37–10–107 is not constitutionally defective, explaining the statute protects consumers seeking personal loans as well as small commercial borrowers because they are exempted from its provisions:

> The writing requirement of the statute applies in situations involving larger commercial loans and subsection (3) clearly excludes loans for personal, family or household use. Subsection (1)(c) even protects commercial borrowers of less than $50,000.00 as it protects consumers. The topic or body of this statute has a legitimate and direct association with the title 'Consumer Protection' and the provisions are germane to one subject. Additionally, the contents comport with the liberally construed purposes, rules of construction and underlying policies of the South Carolina Consumer Protection Code. *See* S.C.Code Ann. § 37–1–102.

On appeal, Sea Cove argues the exclusion of consumer loans from the statute is not related to the subject of consumer law and therefore the statute should not be located in the Consumer Protection Code. Sea Cove asserts the present case involves a business and a bank so there are no consumers, and if it or other business owners "wished to apprise themselves of the legal rights or equitable rights they were relinquishing by doing business with a bank in the state of South Carolina, they could not look to the S.C.Code section on Banks or Banking or the S.C.Code section on the statute of frauds." Therefore, the statute is unconstitutional as violative of Article III, section 17.

In contrast, Harbourside maintains the "statute has a legitimate and direct association with the Consumer Protection Code and the provisions are closely akin to one subject." Harbourside notes "[t]he words 'consumer credit' are even used in subsection (3) of the statute" and "the statute is closely related to the subject of consumer protection in credit transactions."

As noted above, Article III, section 17 is to be liberally construed so as to uphold a challenged provision if at all possible, and the constitutional requirement "is complied with if the title of an act expresses a general subject and the body provides the means to facilitate accomplishment of the general purpose." *Keyserling*, 322 S.C. at 87, 470 S.E.2d at 102.

■ Moreover, "Article III, section 17 requires that an act must relate to but one subject, with topics in the body of the act being kindred in nature and having a legitimate and natural association with the subject of the title and that the title of an act convey reasonable notice of the subject matter to the legislature and the public." *Westvaco Corp. v. South Carolina Dep't of Revenue*, 321 S.C. 59, 64, 467 S.E.2d 739, 741 (1995).

Section 37-10-107 is entitled, "Certain legal or equitable actions prohibited." This gives reasonable notice of the subject matter of the act—the prohibition of certain causes of action, and the text of the statute goes on to specify the instances where a writing is required to litigate an action regarding a loan of money. Although Sea Cove raises a valid concern about the placement of the statute in the Consumer Protection Code, we agree with the circuit court's reasoning that the statute touches upon consumer issues and, applying a liberal construction, it should be upheld.

The statute protects consumers because it excludes from its ambit personal and household loans, as well as small commercial borrowers with loans of less than $50,000. In addition, subsection (3) of the statute further references "consumer credit" in the portion stating the statute does not apply to "an agreement or change in the terms of an agreement relating to a line of consumer credit, lender credit card, or similar arrangement[.]" S.C.Code Ann. § 37-10-107(3)(b). Thus,

consumers are properly made aware of this provision by its inclusion in the Consumer Protection Code.

Many states have now enacted such lender liability limitation provisions, either as amendments to their existing statutes of frauds or as a new statute barring the enforcement of oral lending agreements in the absence of a signed writing. *See* John L. Culhane, Jr., *Lender Liability Limitation Amendments to State Statutes of Frauds,* 45 Bus. Law. 1779 (1990) (discussing the implementation of lender statutes of frauds). The language in South Carolina's statute is based directly on the Model Lender Liability Limitation Statute prepared by the Joint Task Force of the Committees on Consumer and Commercial Financial Services. *See id.* at 1792 (reviewing the provisions of the model statute).

South Carolina's statute, section 37–10–107, is essentially a statute of frauds. Although the legislature did not choose to make this provision an amendment to an existing statute of frauds, this so-called lender statute of frauds is within an area, the Consumer Protection Code, that is calculated to apprise those who are seeking loans of the effects of the writing requirement, and its inclusion in this area is not aberrational. It touches upon consumer issues as it protects consumers seeking personal loans as well as small commercial borrowers by exempting these classes of borrowers from having to meet the statutory requirement. Further, the title gives reasonable notice of its contents, and any reasonable doubts as to its constitutionality should be resolved in favor of upholding the provision. Accordingly, we affirm the circuit court's determination on this point and hold that Sea Cove has not clearly established that section 37–10–107 violates Article III, section 17. *See Westvaco Corp.,* 321 S.C. at 62–63, 467 S.E.2d at 741 (stating "[a] legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution").

## B. Application of Section 37–10–107

Sea Cove next asserts that, even if section 37–10–107 is deemed constitutional, the circuit court erred in applying it here to preclude its claims. Sea Cove maintains Harbour-

side's February 24, 2006 letters, which advised Sea Cove's members that they were "prequalified" for a loan, contain all of the material terms of the loan agreement and they were signed by Harbourside's president; therefore, the letters should be deemed to comply with the writing requirement of section 37–10–107 or should, "[a]t the very least," create a jury question on this issue.

Harbourside argues that none of the documents or writings submitted to the circuit court in this matter, including the February 24, 2006 letters, "contain any indication of a promise . . . or agreement between the parties as required by the legislature under S.C.Code Ann. § 37–10–107"; therefore, the circuit court's order granting summary judgment was proper.

Section 37–10–107 provides in relevant part that no person may maintain an action for failure to perform an alleged promise or agreement to loan money in excess of $50,000 unless the party bringing the action "has received a writing from the party to be charged containing the material terms and conditions of the promise, undertaking, accepted offer, commitment, or agreement and the party to be charged, or its duly authorized agent, has signed the writing." S.C.Code Ann. § 37–10–107(1)(c).

The circuit court found Sea Cove's claims were subject to the writing requirement of section 37–10–107 because its members sought a loan from Harbourside for an amount in excess of $50,000. The circuit court observed that, except for the constitutionality challenge made by Sea Cove, the applicability of section 37–10–107 to the alleged agreement was not an issue before the court.

The circuit court observed that none of the documents, writings, and exhibits submitted to the court "contain any indication of a promise, undertaking, accepted offer, commitment or agreement between the parties as contemplated by the legislature within § 37–10–107." The circuit court also found that any alleged oral assurances could not be used to alter the requirement for a writing. The circuit court concluded that there were no genuine issues of material fact regarding Sea Cove's causes of action for breach of contract and

promissory estoppel, even when the evidence and its inferences were viewed in the light most favorable to Sea Cove.

Specifically as to the February 24, 2006 prequalification letter, the circuit court found "[t]he letter ... relied upon by [Sea Cove] clearly states that [Sea Cove] is 'conditionally qualified' for the loan and mortgage. It further provides that 'this prequalification' is 'subject to' verification and validation of previously supplied information, along with an appraisal and site work. It also expresses that 'additional information' may be needed for final approval." (Citing letter of Brown to Evans dated February 24, 2006). The circuit court noted that "[t]he documents [4] clearly establish that [Sea Cove's] right to receive the loan's proceeds had not vested" and that "this is not the requisite foundation as contemplated by the legislature."

We agree with the circuit court that the February 24, 2006 letters indicated that the loan was not guaranteed and, further, none of the documents submitted to the circuit court show that Sea Cove had obtained Harbourside's final approval for the loan. For example, in the February 24, 2006 letters, Harbourside specifically stated the loan was "subject to" additional verification and had not yet been finally approved:

> This prequalification, which is based on the information you have provided to us, is **subject to** receipt of all necessary documentation to verify and validate the information upon which this conditional qualification was based, satisfactory appraisal, and clear title. There may be additional information needed for final approval, and you will be contacted by your Loan Officer or Loan Processor.

We hold Sea Cove has not shown that the documents satisfy the writing requirement of section 37–10–107 or that they create a genuine issue of material fact in this regard.

---

4. The circuit court also referred in passing to Lohman's affidavit, stating it "does not show that the requirements of a written agreement under S.C.Code Ann. § 37–10–107 were met for invoking judicial involvement over the two alleged causes of action." To the extent Sea Cove's brief can be read to challenge this finding, we find no error and agree with the circuit court that none of the documents submitted by Sea Cove satisfy the requirement for a writing under the statute.

## IV. CONCLUSION

Although it is unfortunate for Sea Cove that its loan application was denied, it was Sea Cove's responsibility to secure final approval for the loan before attempting to proceed with a closing date on the property. The fact that the seller or any other party might have imposed deadlines for closing upon Sea Cove created no legal obligation on the part of Harbourside to accelerate the time it needed for completing the loan evaluation process. Sea Cove has not shown that section 37–10–107 is unconstitutional, nor has it presented a genuine issue of material fact that would indicate application of the statute was inappropriate in this case. Accordingly, we affirm the circuit court's order granting summary judgment to Harbourside.

AFFIRMED.[5]

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., concurring in result only.

---

5. To the extent Sea Cove additionally asserts the circuit court erred in failing to find section 37–10–107 does not apply to an action for breach of contract and in failing to find genuine issues of material fact existed regarding whether an agreement to loan money was reached between the parties and whether Harbourside's president and loan officers had the authority to enter into a loan agreement, we find these issues are not properly before us because they were not preserved. The circuit court ruled solely on Harbourside's first ground for summary judgment, the application of section 37–10–107 and the lack of any writings evidencing a promise or agreement to make a loan and, having affirmed, we agree with the circuit court that its ruling on this ground is dispositive of the matter. *See, e.g., Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009) ("An issue may not be raised for the first time in a motion to reconsider."); *South Carolina Dep't of Soc. Servs. v. Lisa C.*, 380 S.C. 406, 414–15, 669 S.E.2d 647, 652 (Ct.App.2008) (stating a contemporaneous objection is required to preserve an issue for appellate review); *cf. Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").