# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Jacquelin S. Bennett, Genevieve S. Felder, and Kathleen
S. Turner, individually, as Co-Trustees and Beneficiaries
of the Marital Trust and the Qualified Terminable
Interest Trust created by the Thomas Stevenson Will, and
Jacquelin S. Bennett, and Kathleen S. Turner, as Co-
Personal Representatives on behalf of the Estate of
Jacquelin K. Stevenson, Respondents,

v.

T. Heyward Carter Jr., Evans, Carter, Kunes & Bennett,
P.A., Douglas Capital Management, Inc., Dixon Hughes
f/k/a Pratt-Thomas Gumb & Co., P.A., and Lynne L.
Kerrison, Defendants,

Of Whom Dixon Hughes f/k/a Pratt-Thomas Gumb &
Co., and Lynne L. Kerrison are the Petitioners.

Appellate Case No. 2016-000065

———

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———

Appeal from Charleston County
Roger M. Young Sr., Circuit Court Judge

———

Opinion No. 27748
Heard May 24, 2017 – Filed November 8, 2017

———

## AFFIRMED AS MODIFIED

———

M. Dawes Cooke Jr., of Barnwell Whaley Patterson & Helms, LLC, of Charleston, and Frederick K. Sharpless, of Greensboro, both for Petitioners.

Keith M. Babcock, A. Camden Lewis, James Mixon Griffin, and Ariail Elizabeth King, all of Lewis Babcock & Griffin, LLP, of Columbia, for Respondents.

---

**JUSTICE JAMES:** We granted certiorari to review the court of appeals' decision reversing in part a circuit court order which granted Petitioners summary judgment on Respondents' individual cause of action for aiding and abetting a breach of fiduciary duty. *Bennett v. Carter*, Op. No. 2015-UP-491 (S.C. Ct. App. filed Oct. 14, 2015). The sole issue before the Court is whether this cause of action survives summary judgment. We affirm as modified.

## FACTUAL AND PROCEDURAL HISTORY

Jacquelin Stevenson (Mother) was the sole lifetime beneficiary of two trusts created by the will of her husband, who died in 1988.[1] The residual beneficiaries of the two trusts were her sons, Thomas Stevenson III and Daniel Stevenson II (collectively, the Stevenson brothers), and her daughters, Respondents.

The Stevenson brothers were also co-trustees of the two trusts from 1999 to 2006. Respondents allege that while the Stevenson brothers were co-trustees, they violated their fiduciary duties by unlawfully taking money from the trusts. Respondents claim the Stevenson brothers stole approximately five million dollars from the two trusts.

In 1997, Lynne Kerrison and her accounting firm Dixon Hughes (collectively, Petitioners) began preparing the income tax returns of Mother and the two subject trusts. Mother's personal bookkeeper, Pat Neapolitan, provided Kerrison with the information needed to complete Mother's tax returns and those of the trusts. In 2001, while preparing Mother's tax returns, Kerrison noticed the records reflected loans to one of the Stevenson brothers and had concerns about the propriety of the

---

[1] The factual recitations herein are in the light most favorable to Respondents, as this is an appeal from a grant of summary judgment. These findings are not binding on the fact-finder on remand.

transactions. She contacted Mother's attorney, Heyward Carter Jr., and informed him of the transactions. In October of 2001, Kerrison, Carter, and the Stevenson brothers met to discuss the suspect transactions. At this meeting, the Stevenson brothers were advised about the impropriety of these transactions, and they were advised to tell Respondents about their actions. Neither Carter nor Kerrison had any discussions with Respondents about Mother's finances or the finances of the trusts. The Stevenson brothers did not tell Respondents about the transactions until a meeting in 2006.

After the meeting in 2001, the Stevenson brothers continued to withdraw money from the trusts. Neapolitan died, and at some point in 2003, Petitioners began performing the bookkeeping for Mother and the trusts. Petitioners had possession of the trust checkbooks and would write checks from the trusts to the Stevenson brothers. The Stevenson brothers held sole check-signing authority.

To obtain checks from the trusts, the Stevenson brothers would request a withdrawal at Petitioners' office, and Petitioners' employees would then write the checks as requested. Petitioners knew the Stevenson brothers continued to withdraw money from the trusts after the October 2001 meeting. Petitioners were aware some of the checks written for the Stevenson brothers were to the Stevenson brothers' companies, and Petitioners were aware one of Petitioners' partners was personally investing in one of those businesses, as well as sitting on its board.

In 2006, Respondent Kathleen S. Turner (Turner) attended a meeting with Kerrison, Carter, and the Stevenson brothers. At this meeting, Turner learned for the first time that the Stevenson brothers had withdrawn money from the two trusts over a five year period. Mother passed away in 2007. In 2008, Respondents brought suit against the Stevenson brothers, resulting in a settlement with Thomas Stevenson and a judgment against Daniel Stevenson. In 2009, Respondents filed the present action against Petitioners for professional negligence, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty.

The circuit court granted Petitioners' motion for summary judgment on the basis that the three-year statute of limitations had expired on all causes of action. The circuit court also ruled Respondents had not presented sufficient evidence to withstand summary judgment on their claim for aiding and abetting a breach of fiduciary duty. The court of appeals reversed in an unpublished decision, holding there was a question of fact as to when the statute began to run on the cause of action for aiding and abetting a breach of fiduciary duty, and holding Respondents

presented sufficient evidence in support of that claim to withstand summary judgment. *Bennett v. Carter*, Op. No. 2015-UP-491 (S.C. Ct. App. filed Oct. 14, 2015). Petitioners do not challenge the statute of limitations holding; therefore, the only issues before the Court are (1) whether the court of appeals erred in holding Petitioners presented sufficient evidence to allow the aiding and abetting claim to survive summary judgment, and (2) whether the aiding and abetting claim abated upon Mother's death in 2007.

## DISCUSSION

We review the granting of summary judgment under the same standard applied by the trial court under Rule 56(c) of the South Carolina Rules of Civil Procedure. *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 235, 692 S.E.2d 499, 505 (2010). The trial court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Quail Hill, LLC*, 387 S.C. at 235, 692 S.E.2d at 505 (quoting *Pye v. Estate of Fox*, 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006)). "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013). When the trial court grants summary judgment on a question of law, we review the ruling de novo. *See Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).

The elements for aiding and abetting a breach of fiduciary duty are (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages. *Future Grp., II v. Nationsbank*, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996). "The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach." *Id.*

**A. There is Sufficient Evidence to Allow the Aiding and Abetting Claim to Survive Summary Judgment.**

In finding Respondents presented sufficient evidence to withstand summary judgment, the court of appeals wrote, "In addition to taking no further action regarding [the Stevenson brothers'] activities, Kerrison's firm actually had

possession of the trust checkbooks and wrote the checks for [the Stevenson brothers'] withdrawals of funds from the trusts." *Bennett v. Carter*, Op. No. 2015-UP-491. We agree Respondents presented evidence from which a jury could reasonably conclude Petitioners knowingly participated in the Stevenson brothers' breach through Petitioners' possession of the trust checkbooks and writing checks to the Stevenson brothers.[2]  However, to the extent the "in addition to taking no further action" language employed by the court of appeals can be interpreted to hold that Petitioners' non-disclosure is evidence of Petitioners' knowing participation, we modify the court of appeals' opinion.

Petitioners contend the "in addition to" language employed by the court of appeals allows Respondents to pursue their aiding and abetting claim on the theory Petitioners should have disclosed the Stevenson brothers' withdrawals to Respondents, or at least to Turner.  Petitioners argue such disclosure is prohibited by 26 U.S.C. § 7216 (2000) and S.C. Code Ann. § 40-2-190 (Supp. 2004).[3] Respondents argue the "related taxpayer" exception in 26 C.F.R. § 301.7216-2(b)(1)-(2) (2001)[4] allowed Petitioners to make the disclosure to Respondents.  We agree with Petitioners.

---

[2] We take no position as to whether other facts, if proven, would also support a claim for aiding and abetting a breach of fiduciary duty.

[3] Petitioners cite section 40-2-190(A) of the South Carolina Code for the proposition that their disclosure of the withdrawals to Respondents was prohibited.  Respondents contend Petitioners failed to cite this statute in their arguments before the trial court and the court of appeals, and, therefore, Petitioners are unable to now rely on this statute as authority.  We first note the effective date of current section 40-2-190(A) was July 22, 2004—several years after the allegedly improper withdrawals began but more than a year before they ended.  It appears the text of current section 40-2-190(A) did not exist elsewhere in the South Carolina Code prior to July 22, 2004; at the least, Petitioners have not cited to any similar statutory language existing prior to this date, and we have been unable to find any such language.  Whatever the case, we find the applicable federal authority as discussed herein is sufficient to support our conclusions.

[4] Parties cite to the "related taxpayer" exception as 26 C.F.R. § 301.7216-2(e)(1)-(2); however, during the time period in which the alleged aiding and abetting occurred, the "related taxpayer" exception was located in subsection (b)(1)-(2).  The "related taxpayer" exception was not moved to subsection (e)(1)-(2) until the 2008 version

Petitioners were prohibited by 26 U.S.C. § 7216 from disclosing the Stevenson brothers' withdrawals to Respondents because this statute prohibits any person who is engaged in the business of preparing tax returns—here, Petitioners—from disclosing to a third party any information furnished for, or in connection with, the preparation of any such return and imposes criminal sanctions for a violation of this prohibition. Respondents contend the "related taxpayer" exception set forth in 26 C.F.R. § 301.7216-2(b)(1)-(2)[5] allowed for disclosure to Turner, as Petitioners also prepared her individual tax returns. We disagree. The exception does not apply, as the exception is triggered only when the tax preparer is engaged in "preparing a tax return of a second taxpayer" *and* when the subject information was used in preparing the second taxpayer's returns. 26 C.F.R. § 301.7216-2(b)(1)-(2). While Turner may have been a "second taxpayer," there is no evidence any information pertaining to the illicit withdrawals was used "in preparing" her personal returns.

Respondents also claim Petitioners should have disclosed the withdrawals to Turner because she was designated as Mother's attorney-in-fact under Mother's 2001 power of attorney. Respondents correctly state that the holder of a power of attorney steps into the shoes of the grantor and is basically the alter ego of the grantor. *See Muller v. Bank of Am., N.A.*, 12 P.3d 899, 904 (Kan. Ct. App. 2000) (citing 3 Am. Jur. 2d, *Agency* § 23). However, since Kerrison notified Carter, Mother's personal attorney, of the withdrawals, that was sufficient to notify Mother. *See Crystal Ice Co. of Columbia, Inc. v. First Colonial Corp.*, 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979) ("It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting within the scope of his authority."). Mother was Carter's client and was competent at the time Kerrison informed Carter about the withdrawals. While Kerrison *could have* disclosed any information to Turner that was disclosed to Mother through Carter, the power of attorney did not create a separate and independent obligation on the part of Petitioners to disclose the withdrawals to Turner in her capacity as Mother's attorney-in-fact. The fact that disclosure to Turner as attorney-in-fact would have resulted in her being individually aware of the withdrawals is of no import.

### B. The Aiding and Abetting Claim Survives Mother's Death.

---

of the Code of Federal Regulations. *See* 26 C.F.R. § 301.7216-2(e)(1)-(2) (2008). Nevertheless, the language is substantially the same.

[5] *See* note 4.

Petitioners contend they are entitled to summary judgment on the ground that Respondents' claim for aiding and abetting a breach of fiduciary duty abated on the death of Mother because the claim rests on a theory of fraud and deceit.[6] We disagree.

Section 15-5-90 of the South Carolina Code (2005) provides "[c]auses of action for and in respect to . . . any and all injuries to the person or to personal property shall survive both to and against the personal or real representative . . . of a deceased person . . . any law or rule to the contrary notwithstanding." However, South Carolina recognizes several exceptions to the survivability of a claim, including an exception for fraud. *See Mattison v. Palmetto State Life Ins. Co.*, 197 S.C. 256, 15 S.E.2d 117 (1941).

Petitioners first argue Respondents' claim for aiding and abetting does not survive Mother's death because the essence of the claim is that Petitioners fraudulently failed to disclose to Respondents the Stevenson brothers' fraud and deceit. This argument is unavailing, as we have determined Petitioners had no obligation to disclose the Stevenson brothers' withdrawals to Respondents. Nondisclosure to Respondents—fraudulent or otherwise—is not part of Respondents' aiding and abetting claim.

Second, Petitioners argue the aiding and abetting claim does not survive Mother's death because the claim is based on the Stevenson brothers' fraudulent conduct against Mother, the sole lifetime beneficiary of the trusts. That argument is likewise unavailing. While the Stevenson brothers' alleged fraud and deceit committed against Mother will be in evidence, Respondents' claim for aiding and abetting is based on the Stevenson brothers' fraud and deceit committed against Respondents. The issues framed to this Court have been with regard to Respondents' *individual* claims as beneficiaries, not their claims as co-trustees or co-personal representatives of Mother's estate. Within the context of abatement, the fact that Mother may have been a victim of the Stevenson brothers' fraud and deceit does not impact the viability of Respondents' individual claims. Their individual claims do

---

[6] Petitioners asserted this ground in their original motion, but it was not ruled upon by the trial judge. Petitioners asserted it as an additional sustaining ground before the court of appeals and then again in their petition for rehearing, but it was not ruled upon by the court of appeals. They have raised the issue again before this Court.

not derive from damage sustained by Mother during her lifetime, but rather from damage they must prove they individually sustained as residual beneficiaries.

## CONCLUSION

The decision of the court of appeals reversing the grant of summary judgment to Petitioners is affirmed as modified.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, HEARN, JJ., and Acting Justice Clifton Newman, concur.**