# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Jeffrey S. Kagan, Appellant,

v.

D. Renee Simchon, Respondent.

Appellate Case No. 2017-000810

---

Appeal From Greenwood County
Frank R. Addy, Jr., Circuit Court Judge

---

Opinion No. 5713
Heard May 16, 2019 – Filed February 12, 2020

---

## AFFIRMED

---

Clarence Rauch Wise, of Greenwood, for Appellant.

J. Walker Coleman, IV, Meg Elizabeth Sawyer, and
Jennifer Hess Thiem, all of K&L Gates LLP, of
Charleston; and Edward S. McCallum, III, of Law
Offices of Edward S. McCallum, III, of Greenwood, all
for Respondent.

---

**WILLIAMS, J.:** In this civil matter, Jeffrey S. Kagan appeals the circuit court's
order granting summary judgment to D. Renee Simchon on Kagan's breach of
contract and promissory estoppel claims for repayment of a loan in the amount of
$210,000. On appeal, Kagan argues the circuit court erred in finding the statute of
frauds and statute of limitations barred his claims. We affirm.

## FACTS/PROCEDURAL HISTORY

The facts in the light most favorable to Kagan are as follows.[1]  From 1993 to 2013, Kagan periodically worked as an independent contractor for Bay Island Sportswear, Inc. (Bay Island Sportswear), a company owned by Simchon's husband, Sam Simchon (Husband).  Simchon owned a realty company, Greenwood Realty, next door to Husband's business.  Over the years, Kagan maintained a close relationship with the Simchons and lent them money on occasion, including a loan to Bay Island Sportswear for $129,000 in June 2009 (First Loan).

On October 26, 2010, Kagan loaned Simchon $210,000 (Second Loan), which Simchon used to pay off a balloon payment on a mortgage that she held for her clients—the Wagners—on a property in Waterloo, South Carolina.  Pursuant to an oral agreement between Kagan and Simchon, Kagan would collect six and a half percent annual interest on the Second Loan from the Wagners, and Simchon would repay the principal amount upon the sale and closing of the Waterloo property.

On March 11, 2011, Simchon closed on the sale of the Waterloo property.  Upon receiving the proceeds of the sale, Simchon wrote Kagan a check for $31,616.46 on March 21, 2011, and transferred the remainder of the principal—$180,000—to Husband to invest in cotton futures on Kagan's behalf.  In his deposition, Kagan testified he went to see Simchon after the closing on the Waterloo property.  When asked about repayment of the remainder of the Second Loan, Simchon informed him that she transferred the remaining $180,000 to Husband to invest.  Kagan averred he did not authorize Simchon's transfer of the funds to Husband.  In response, Kagan contacted Husband about the repayment of the remainder on the Second Loan.  By Kagan's own account, he thereafter looked to Husband for repayment of the Second Loan.[2]  Over the next couple of years, Husband made periodic payments on the loans.  Kagan did not receive any further payments from Simchon.

In November 2013, Kagan made another loan to Husband and Bay Island Sportswear for $52,000 (Third Loan), which Kagan believed to be consolidated

---

[1] *See Bennett v. Carter*, 421 S.C. 374, 379–80, 807 S.E.2d 197, 200 (2017) (providing that on appeal from an order granting summary judgment, this court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party).

[2] At this point, Kagan believed the parties had agreed to consolidate the First and Second Loans.

with the remaining principal on the prior loans.  The last payment Kagan received from Husband was on November 6, 2013.  In April 2014, Husband terminated Kagan's employment with Bay Island Sportswear.

On August 31, 2015, Kagan filed a summons and complaint against Simchon, Husband, Bay Island Sportswear, and Bay Island, LLC (collectively, Defendants), seeking repayment of all three loans and alleging breach of contract, breach of contract accompanied by a fraudulent act, promissory estoppel, and intentional infliction of emotional distress.  In his complaint, Kagan admitted the parties never reduced the First Loan to a writing but alleged Simchon drafted a written agreement regarding the terms of the Second Loan.[3]  As to the Third Loan, Kagan alleged the parties agreed to modify the terms of the prior consolidated loans to include the principal of the Third Loan plus interest, but he did not assert the parties reduced this agreement to a writing.  On November 15, 2015, Defendants filed a motion to dismiss Kagan's claims, and the circuit court held a hearing on the matter on February 8, 2016.  At the hearing, Kagan alleged a writing evidencing the terms of the Second Loan existed, and he believed discovery was necessary to locate the document.

Via a Form 4 order dated February 8, 2016, the circuit court granted Defendants' motion to dismiss in part pursuant to Rule 12(b)(6), SCRCP.  Specifically, the court granted Defendants' motion to dismiss with respect to the First Loan and the Third Loan, finding both loans clearly violated section 37-10-107 of the South Carolina Code (2015).[4]  The court additionally dismissed Kagan's claim for intentional infliction of emotional distress as to all three loans.

On March 28, 2016, Defendants moved to amend the caption to reflect the court's prior dismissal of all claims against Husband, Bay Island Sportswear, and Bay Island, LLC, which the circuit court granted by order dated April 12, 2016.  Simchon subsequently filed an answer and counterclaim to Kagan's remaining breach of contract and promissory estoppel claims as to the Second Loan.

Following the completion of discovery, Simchon filed a motion for summary judgment on October 26, 2016, arguing Kagan's remaining claims were barred by

---

[3] Kagan did not attach this alleged writing to his complaint.

[4] § 37-10-107(1) (providing that a party may not maintain legal or equitable actions for an alleged promise to lend or borrow money in excess of fifty thousand dollars where there is no writing signed by the party to be charged and evidencing the material terms of the agreement).

the statute of frauds enumerated in section 37-10-107 or, alternatively, by the statute of limitations enumerated in subsection 15-3-530(1) of the South Carolina Code (2005).  The circuit court held a hearing on January 24, 2017, and issued an order granting summary judgment to Simchon on February 21, 2017.[5]  This appeal followed.[6]

## ISSUES ON APPEAL

I.   Did the circuit court err in finding the statute of frauds enumerated in section 37-10-107 applied to the Second Loan?[7]

---

[5] The circuit court did not make specific findings of fact or law in its order granting summary judgment to Simchon.

[6] Kagan neither challenges the circuit court's dismissal of his intentional infliction of emotional distress claim nor the dismissal of the remaining claims regarding the First and Third Loans.

[7] As an initial matter, Kagan argues the circuit court erred in finding section 37-10-107 barred his claims because his action does not fall within the purview of the statute.  Kagan maintains the legislature enacted section 37-10-107 as a means of limiting actions against commercial lenders.  Kagan therefore asserts section 37-10-107 does not apply to the instant case because it is not an action against the lender seeking to enforce an alleged promise to lend money; rather, it is an action against the borrower seeking repayment of a loan that has already occurred.  Kagan further argues enforcement of the statute of frauds in the case at bar would be "a miscarriage of justice" because both parties admit the loan occurred and only dispute whether the loan was repaid.  We find this argument is unpreserved for appellate review as Kagan's argument regarding the applicability of section 37-10-107 to the Second Loan differs on appeal from what he argued below.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review."); *Dunes W. Golf Club, LLC v. Town of Mount Pleasant*, 401 S.C. 280, 302 n.11, 737 S.E.2d 601, 612 n.11 (2013) (providing that a party may not raise one argument below and an alternate argument on appeal).  Kagan raises this argument for the first time in his appellate brief.  In his memorandum in opposition to Simchon's motion for summary judgment and at the subsequent hearing, Kagan argued section 37-10-107 did not apply to his case because Kagan's loan to Simchon was not a "consumer loan" as contemplated by the Consumer Protection Code.  This argument is without merit.  *See* S.C. Code Ann. § 37-10-101 (2015) ("Except as otherwise provided in other chapters of this title, *this chapter* applies to

II. Did the circuit court err in finding Kagan's claims regarding the Second Loan were not exempt from the statute of frauds pursuant to subsection 37-10-107(3)(a)?

III. Did the circuit err in finding the statute of limitations enumerated in subsection 15-3-530(1) barred Kagan's claims regarding the Second Loan?

## STANDARD OF REVIEW

"The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder." *Prince v. Liberty Life Ins. Co.*, 390 S.C. 166, 169, 700 S.E.2d 280, 281 (Ct. App. 2010). "We review the granting of summary judgment under the same standard applied by the [circuit] court under Rule 56(c) of the South Carolina Rules of Civil Procedure." *Bennett*, 421 S.C. at 379, 807 S.E.2d at 200. "Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law." *Carolina Chloride, Inc. v. S.C. Dep't of Transp.*, 391 S.C. 429, 434, 706 S.E.2d 501, 504 (2011). "Summary judgment is not appropriate whe[n] further inquiry into the facts of the case is desirable to clarify the application of the law." *Id.* "However, it is not sufficient for a party to create an inference that is not reasonable or an issue of fact that is not genuine." *McMaster v. Dewitt*, 411 S.C. 138, 143, 767 S.E.2d 451, 453–54 (Ct. App. 2014) (quoting *Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013)). "In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party." *Carolina Chloride*, 391 S.C. at 434, 706 S.E.2d at 504.

## LAW/ANALYSIS

### I. Statute of Frauds

---

designated loan transactions *other than* consumer loan transactions." (emphasis added)). Additionally, at the circuit court level, Kagan argued (1) the checks issued between the parties provided sufficient writings to evidence the agreement between Kagan and Simchon and (2) the circuit court should apply the lost memorandum exception as used in other jurisdictions. However, Kagan does not address these arguments on appeal.

Kagan argues the circuit court erred in granting summary judgment to Simchon because the court improperly found section 37-10-107 barred his claims regarding the Second Loan. Specifically, Kagan argues the circuit court erred in finding section 37-10-107 barred his claims because Simchon used the loaned funds for personal purposes, and therefore, the loan was exempt from the statutory bar pursuant to subsection 37-10-107(3)(a). He asserts, at a minimum, the court erred in finding a question of fact regarding the purpose of the loan did not exist. We disagree.

"Section 37-10-107 precludes certain actions regarding loans for money whe[n] there is no writing evidencing the alleged promise or agreement." *Sea Cove Dev., LLC v. Harbourside Cmty. Bank*, 387 S.C. 95, 102, 691 S.E.2d 158, 161 (2010). It provides:

> *No person may maintain an action for legal or equitable relief* or a defense based upon a failure to perform an alleged promise, undertaking, accepted offer, commitment, or agreement . . . *to lend or borrow money* . . . or . . . to renew, modify, amend, or cancel a loan of money or any provision with respect to a loan of money, involving in any such case a principal amount in excess of fifty thousand dollars, *unless* the party seeking to maintain the action or defense *has received a writing from the party to be charged* containing the material terms and conditions of the promise, undertaking, accepted offer, commitment, or agreement and the party to be charged, or its duly authorized agent, has signed the writing.

§ 37-10-107(1) (emphasis added).[8] Subsection 37-10-107(2)(b) further provides a party's failure to comply with subsection 37-10-107(1) precludes an action based on the theory of promissory estoppel.

Subsection 37-10-107(3)(a) provides the provisions of subsections (1) and (2) do not apply to loans of money "used primarily for personal, family, or household purposes." Although our jurisprudence has not directly addressed this exemption, we find Kagan has failed to show a genuine issue of material fact existed regarding

---

[8] Subsection 37-1-301(20) provides "'Person' includes a natural person or an individual, and an organization." S.C. Code Ann. § 37-1-301(20) (2015).

the Second Loan's underlying purpose or that the circuit court erred in its conclusion that Simchon was entitled to summary judgment as a matter of law.

Simchon is the owner and broker-in-charge of Greenwood Realty; as part of her business, Simchon provides her clients with the option to finance a property directly through her when they are unable to obtain a mortgage through a conventional mortgage lender or bank. In her deposition testimony, Simchon referred to these agreements as "owner financed agreements" and alleged she had entered into several of these agreements with Kagan in the past. Regarding the real estate transaction underlying the Second Loan, Simchon testified she obtained a mortgage for the Waterloo property because County Bank would not lend to the Wagners directly. Simchon explained the recorded deed listed her and the Wagners as titleholders to the property, but she recorded the owner finance agreement with the deed to show she was merely the mortgage holder to the property. According to Simchon, the Wagners had a balloon payment due pursuant to the owner finance agreement, which coincided with a balloon payment due on the mortgage through County Bank. Simchon testified the Wagners were unable to make the balloon payment and that pursuant to the owner finance agreement, she would take over ownership of the property if they defaulted on the loan. Simchon testified Kagan entered into an agreement with the Wagners wherein he would provide the money for the balloon payment to Simchon—the Second Loan—and the Wagners would pay him six and a half percent interest. Simchon explained that pursuant to this agreement, she would transfer the Wagners's interest payments to Kagan, and he would receive a repayment of the principal amount upon the sale and closing of the property. Simchon testified she and Kagan never reduced this agreement to a writing but noted she did not know whether Kagan had a written agreement with the Wagners.[9]

Although Kagan contends a factual inquiry existed as to the purpose of the Second Loan, his deposition testimony regarding the underlying facts of the loan was consistent with that of Simchon. Accordingly, we find further inquiry into the facts of this case was not necessary, and the circuit court did not err in finding the case appropriate for summary judgment. *See Prince*, 390 S.C. at 169, 700 S.E.2d at 281 ("The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder."); *Carolina Chloride*, 391 S.C. at 434,

---

[9] Regarding Kagan's assertion that he and Simchon had a written agreement evidencing the terms of the Second Loan, Simchon testified she believed Kagan was confusing a separate contract evidencing an owner finance agreement between them as to a separate property.

706 S.E.2d at 504 ("Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law.").

As to the circuit court's conclusion of law, Kagan argues the Second Loan is exempt from the statute of frauds because neither he nor Simchon are commercial lenders, and therefore, Simchon's use of the Second Loan was for personal purposes. Kagan further contends that because Simchon obtained the mortgage from County Bank in her name rather than that of Greenwood Realty, her use of the Second Loan to pay off the balloon payment was for personal purposes.[10] We find Kagan's interpretation of this exemption incorporates requirements not presented within the plain language of the statute. *See Jones v. State Farm Mut. Auto. Ins. Co.*, 364 S.C. 222, 231, 612 S.E.2d 719, 723 (Ct. App. 2005) ("When the terms of a statute are clear, the court must apply those terms according to their literal meaning."); *id.* at 231, 612 S.E.2d at 724 ("The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced

---

[10] Kagan additionally argues this court should interpret the meaning of "personal, family, or household purposes" consistently with the interpretation employed in the federal Truth in Lending Act. *See* 15 U.S.C. §§ 1601–1667(f) (2012 & Supp. V 2017). Kagan further argues that in determining the underlying purpose for the Second Loan, the court must look to his intention as the lender rather than the subjective intention of Simchon as the borrower. Kagan solely relies on authority from other jurisdictions to support these arguments. *See Tower v. Moss*, 625 F.2d 1161 (5th Cir. 1980); *Maddox v. St. Joe Papermakers Fed. Credit Union*, 572 So.2d 961 (Fla. Dist. Ct. App. 1990). However, Kagan neither presented these arguments in his opposition memorandum to Simchon's motion for summary judgment nor at the motion's hearing before the circuit court. Accordingly, we find Kagan failed to safeguard these arguments for appellate review. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [circuit court] to be preserved for appellate review."); *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("[T]he losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate court will review those issues and arguments."); *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 372–73, 628 S.E.2d 902, 919 (Ct. App. 2006) ("Error preservation principles are intended to enable the [circuit] court to rule after it has considered all relevant facts, law, and arguments. The rationale for the rule is that until the [circuit] court considers the matter and makes a ruling, an appellate court is unable to find error." (citation omitted)).

construction."). The plain language of subsection 37-10-107(3)(a) states that the statute of frauds does not apply to "a loan of money *used* primarily for personal, family, or household purposes." § 37-10-107(3)(a) (emphasis added). Although Simchon obtained the mortgage for the Waterloo property from County Bank in her name, we find her testimony establishes that she routinely engages in this practice as a means of providing an alternate financing option for Greenwood Realty clients who are unable to obtain mortgages from commercial lenders; therefore, we find she primarily used the funds for business purposes. Further, in his deposition testimony, Kagan acknowledged that Simchon routinely entered into owner finance agreements with her clients. Thus, we hold the circuit court did not err in finding the Second Loan was not exempt from the statute of frauds enumerated in subsection 37-10-107(1).

Moreover, we find the circuit court did not err in finding the statute of frauds barred Kagan's breach of contract and promissory estoppel claims as to the Second Loan because Kagan failed to present a signed writing evidencing his loan to Simchon in the amount of $210,000. *See* § 37-10-107(1) (providing that a party may not maintain legal or equitable actions for an alleged promise to lend or borrow money in excess of fifty thousand dollars where there is no writing signed by the party to be charged and evidencing the material terms of the agreement).

## II.    Statute of Limitations

Kagan argues the circuit court erred in granting summary judgment to Simchon because the court improperly found the statute of limitations barred his breach of contract claims. Specifically, Kagan contends Husband's payments on the loans tolled the statute of limitations until the payments ceased. We disagree.

"Summary judgment is appropriate when a plaintiff does not commence an action within the applicable statute of limitations." *McMaster*, 411 S.C. at 143, 767 S.E.2d at 453. Pursuant to section 15-3-530(1) of the South Carolina Code (2005), "[a]n action for breach of contract must be commenced within three years." *Prince*, 390 S.C. at 169, 700 S.E.2d at 282. "The discovery rule applies to breach of contract actions." *Id.* "Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence." *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct. App. 1998). "If there is conflicting evidence as to whether a claimant knew or should have known he or she had a cause of action,

the question is one for the jury." *Garner v. Houck*, 312 S.C. 481, 485, 435 S.E.2d 847, 849 (1993).

We find the circuit court properly found the statute of limitations barred Kagan's breach of contract claims as to the Second Loan. Here, Kagan's contention that Husband's payments on the loan tolled the triggering of the limitations period relies on the premise that the Second Loan was effectively consolidated with the First and Third Loans. This argument fails as the circuit court previously dismissed Kagan's claims as to the other loans pursuant to Rule 12(b)(6), SCRCP, and Kagan does not challenge their dismissal on appeal. *See In re Morrison*, 321 S.C. 370, 372 n.2, 468 S.E.2d 651, 652 n.2 (1996) (noting an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal). Furthermore, we find the loans were not effectively consolidated as required under section 37-10-107(1)(c) of the South Carolina Code (2015). This section provides that for the modification or amendment of a loan in excess of fifty thousand dollars to be enforceable at law or in equity, the parties must reduce their agreement to a writing evidencing the material terms and conditions of the agreement and signed by the party to be charged. *Id.* Here, Kagan admits the First and Third loans were never reduced to a writing. Further, in his deposition testimony, he stated his agreement with Husband to consolidate all three loans was based on "a handshake, a look in the eye and a personal relationship." Therefore, we hold Kagan did not effectively consolidate the loans, and thus, Husband's payments on the alleged consolidated loan did not toll the statute of limitations.

Accordingly, we find the statute of limitations began to run at the time Simchon breached her agreement with Kagan. *See* § 15-3-530(1) (providing an action for breach of contract must be commenced within three years); *Prince*, 390 S.C. at 169, 700 S.E.2d at 282 ("The discovery rule applies to breach of contract actions."); *Maher*, 331 S.C. at 377, 500 S.E.2d at 207 ("Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence."). By his own testimony, Kagan believed Simchon breached their agreement as to the Second Loan on March 21, 2011, when she failed to transfer the remainder of the principal after the closing on the Waterloo property and instead transferred the money to Husband to invest on Kagan's behalf. Therefore, section 15-3-530(1) required Kagan to file his action no later than March 21, 2014. Kagan did not file his complaint until August 31, 2015. Accordingly, we hold the circuit court properly found the statute of limitations barred Kagan's breach of contract claims and appropriately granted summary judgment to Simchon. *See McMaster*, 411 S.C. at

143, 767 S.E.2d at 453 ("Summary judgment is appropriate when a plaintiff does not commence an action within the applicable statute of limitations.").

**CONCLUSION**

Based on the foregoing, the circuit court's order granting summary judgment to Simchon is

**AFFIRMED.**

**HILL, J., concurs.**

**GEATHERS, J., concurring in part and dissenting in part:**

I concur in the majority opinion's conclusion that the applicable statute of limitations precludes Kagan's breach of contract claim. However, I write separately because I do not believe that section 37-10-107 of the South Carolina Code (2015) (the lender statute of frauds) precludes Kagan's promissory estoppel claim as I do not find that the statute is applicable to the loan at issue in this case. I would therefore reverse the grant of summary judgment on Kagan's promissory estoppel claim and remand the case to the circuit court.

During argument before the circuit court, Kagan argued that his loan did not fall within the purview of section 37-10-107 because it was not a "consumer loan" as contemplated by the Consumer Protection Code. Specifically, in his memo in opposition to summary judgment, Kagan includes a subsection captioned, "The S.C. Consumer Protection Code does not apply to this loan," and generally argues that the agreement between he and Simchon is not controlled by section 37-10-107. On appeal, Kagan modifies his argument by taking the position that the statute does not apply because he is attempting to enforce a loan, not a promise to lend or borrow money. Because Kagan raises a different argument regarding the applicability of the statute on appeal, the majority finds the issue unpreserved. However, while the specific rationales are different, Kagan's argument that the statute does not apply to his loan is essentially the same. *See State v. Williams*, 417 S.C.209, 229, 789 S.E.2d 582, 593 (Ct. App. 2016) ("[I]t may be good practice for us to reach the merits of an issue when error preservation is doubtful." (quoting *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012))). Moreover, Kagan also argued that his loan was exempt from the statute under section 37-10-107(3)(a). Subsection 37-10-107(3)(a) provides the provisions of subsections (1) and (2) do not apply to loans of money "used primarily for personal, family or

household purposes." In my view, by invoking the exemption to the statute, Kagan implicitly raised the applicability of 37-10-107(1) to the circuit court because, at first instance, the circuit court had to determine whether the statute was applicable to the loan at issue before determining whether the statutory exemption applied. Accordingly, I would find Kagan's argument regarding the applicability of 37-10-107 preserved for appellate review. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (observing that an issue must be raised to and ruled upon by the circuit court to be preserved for appellate review).

Based on my reading of the statute, the emphasis is on promises to lend or borrow money rather than loan contracts or the obligation to repay such loans. *See* S.C. Code Ann. § 37-10-107 (2015) (No person may maintain an action for legal or equitable relief or a defense based upon a failure to perform *an alleged promise . . . to lend or borrow money . . .* in excess of fifty thousand dollars, unless the party seeking to maintain the action or defense has received a writing from the party to be charged containing the material terms and conditions of the promise . . . and the party to be charged, or its duly authorized agent, has signed the writing." (emphases added)). Accordingly, I understand the statute to preclude actions to enforce promises to lend or borrow money, rather than actions to require payment, if such promises or agreements are not in writing. This reading of the statute is supported by section 37-10-107(2)(b), which precludes a party from pursuing an action for promissory estoppel if the party cannot produce a writing evidencing a promise to lend money. In my view, the statute is applicable to situations where a lender allegedly promises to lend money and a party relies on that promise to their detriment by taking some action with the expectation of receiving a loan. In other words, the statute is meant to protect lenders from potential fraud perpetrated by prospective borrowers.

Our supreme court took a similar position regarding the statute in *Sea Cove Dev., LLC v. Harbourside Cmty. Bank*, 387 S.C. 95, 102, 691 S.E.2d 158, 161 (2010). In that case, the developer applied to the bank for a loan to finance the purchase of property and the anticipated construction. *Id*. at 98, 691 S.E.2d at 160. The bank sent the development company a letter notifying it that it was "conditionally qualified" for a mortgage loan. *Id*. The letter further provided that the prequalification was subject to certain conditions. *Id*. at 98–99, 691 S.E.2d at 160. Ultimately, the bank denied the loan application based on the developer's insufficient income and excessive obligations related to income. *Id*. at 99, 691 S.E.2d at 160. The development company filed a complaint for breach of contract and promissory estoppel against the bank asserting that it had a loan agreement with the bank, and

that it had forfeited deposits and incurred expenses based on assurances from the bank. *Id*. at 99–100, 691 S.E.2d at 160.

The supreme court explained that section 37-10-107 is commonly referred to as a "lender liability limitation" provision, noting that such statutes had been enacted in many states around the country. *Id*. at 105, 691 S.E.2d at 163. Accordingly, the court ruled the statute "provides in relevant part that no person may maintain an action for failure to perform an alleged *promise or agreement to loan money* in excess of $50,000" unless the promise satisfies the writing requirements of the statute. *Id*. at 106, 691 S.E.2d at 164 (emphasis added). In affirming the circuit court's grant of summary judgment, the supreme court noted that the prequalification letters "indicated that the loan was not guaranteed and, further, none of the documents submitted to the circuit court show that [developer] had obtained [bank's] final approval for the loan." *Id*. at 107, 691 S.E.2d at 164. Under the facts of *Sea Cove*, there was no loan issued or a corresponding obligation to repay. Rather, the development company asserted that the bank breached an agreement to provide the development company with a loan and that the development company relied on this agreement to its detriment. The court found that summary judgment was appropriate because the development company did not produce a signed writing evidencing a promise by the bank to lend the funds. *Id*.

Furthermore, the American Bar Association's (ABA) model statute provides historical context for the purpose of the lender liability limitation statute. *See id*. at 105, 691 S.E.2d at 163 ("The language in South Carolina's statute is based directly on the Model Lender Liability Limitation Statute prepared by the Joint Task Force of the Committees on Consumer and Commercial Financial Services."). In 1989, the ABA organized a task force to develop a model statute intended to bar the enforcement of oral lending agreements in the absence of a signed writing. *See* John L. Culhane, Jr. and Dean C. Gramlich, *Lender Liability Limitation Amendments to State Statutes of Frauds*, 45 Bus. Law. 1779, 1780–81 (1990). The necessity for such a statute stemmed from several cases in which banks were subject to liability based on oral promises to lend money. *Id*. at 1783–85. Consequently "[t]he practice of providing oral commitments to *prospective borrowers*, or, at least, persuasive allegations to that effect, has undoubtedly increased the liability exposure of banks and may in some instances have threatened their solvency." *Id*. at 1785 (emphasis added). Thus, "[t]he goal for any state legislature contemplating a lender liability limitation statute . . . should be to protect the lender against claims raised by sophisticated borrowers who were or could have been represented by counsel and who could have had any agreements reduced to written form." *Id*. at 1786.

Based on the foregoing, I find the purpose of section 37-10-107 is to limit a lender's liability when a borrower alleges that it has relied on the lender's promise to loan funds by requiring a signed writing evidencing the material terms of such promises. Thus, the statute does not apply to loan contracts or the corresponding obligation to repay. Therefore, I do not believe section 37-10-107(2)(b) precludes Kagan's promissory estoppel action.

Accordingly, as to the majority's conclusion on the promissory estoppel action, I respectfully dissent.