# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Timothy Artez Pulley, Appellant.

Appellate Case No. 2015-002206

―――――――――

Appeal From Laurens County
Donald B. Hocker, Circuit Court Judge

―――――――――

Opinion No. 27811
Heard March 27, 2018 – Filed June 6, 2018

―――――――――

**REVERSED**

―――――――――

Clarence R. Wise, of Greenwood, for Appellant.

Attorney General Alan M. Wilson and Assistant Attorney
General William M. Blitch, Jr., both of Columbia, and
Solicitor David M. Stumbo, of Greenwood, for
Respondent.

―――――――――

**CHIEF JUSTICE BEATTY:** Timothy Pulley appeals his conviction for trafficking cocaine base (cocaine) of ten grams or more, but less than twenty-eight grams in violation of section 44-53-375(C)(1) of the South Carolina Code (2018). Pulley alleges the trial court erred in: (1) charging a permissive inference that knowledge and possession of a substance may be inferred when the substance is found on the property under the defendant's control; (2) failing to charge the jury

that the State must prove a complete chain of custody; (3) failing to suppress the cocaine due to an incomplete chain of custody; (4) failing to suppress the cocaine due to an invalid inventory search; (5) finding the cocaine was seized pursuant to a valid search incident to arrest; and (6) failing to require the State to open fully on the law and the facts of the case in closing argument and reply only to arguments of Pulley's defense counsel.[1]  We find the trial court erred in concluding the State established a complete chain of custody.  Accordingly, we reverse Pulley's conviction and sentence.

## I.    Factual/Procedural History[2]

On Saturday, June 22, 2013, Pulley picked up his girlfriend's vehicle from a local paint shop.  Early the next morning, Officers Brewer and Craven, of the Laurens Police Department (the Department), initiated a traffic stop to cite Pulley for a speeding violation.  Both officers—driving separately—activated their blue lights[3] and followed Pulley until he eventually parked in the McDonald's parking lot.  After stopping, Pulley immediately exited the vehicle and closed the door.  At that time, Craven recognized Pulley from a prior incident and knew that he was driving under suspension (DUS).  The officers asked Pulley for identification and he responded he did not have a license.  As a result, the two officers attempted to place Pulley under arrest for DUS.  After a struggle, the officers eventually handcuffed Pulley and placed him into Brewer's patrol car.  During the struggle Pulley's pants came off.  Before returning the pants to Pulley, the officers searched them and found marijuana.

Although the Department did not have a policy outlining the procedures for towing vehicles from private property, the officers determined the vehicle should be towed because the traffic violation occurred on a public highway and Pulley was arrested.  Thus, the officers conducted an inventory search of the vehicle.  Before

---

[1] Pulley appealed and his case was certified to this Court from the Court of Appeals pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

[2] We note that this is the second trial of this case.  Pulley's initial trial ended with a hung jury.

[3] At this time, the dash cam recorder was activated and incorporated thirty seconds of video footage prior to the activation of the blue lights.

the tow truck arrived, and upon opening the driver's side door, the officers located a yellow grocery bag on the floor behind the driver's seat. Inside the yellow grocery bag, the officers found three clear plastic bags that, combined, contained 16.5 grams of cocaine.

A grand jury indicted Pulley for trafficking cocaine. Prior to trial, Pulley moved to suppress the drug evidence discovered during the inventory search on the basis that the officers were not authorized to tow the vehicle from the private parking lot and failed to follow the Department's inventory procedures.

At the suppression hearing,[4] Craven admitted that the vehicle was not impeding traffic in the McDonald's parking lot, but that it was standard procedure to tow vehicles where the lone occupant was arrested. Additionally, Craven testified he did not list the drugs on the "towed vehicle report" because they were not personal items and were instead listed on the incident report property list. However, Craven acknowledged that the tow truck driver did not sign the report, as is customary, and admitted he did not complete the inventory report form until he returned to the Department and filled out the report the best he could from memory.

The trial court denied the motion to suppress on the grounds that the speeding violation created probable cause to stop the vehicle and, after Pulley was arrested for DUS, the marijuana the officers found on Pulley's person provided the justification for the officers to search the car,[5] without a warrant, incident to arrest.

_____

[4] This hearing was held before the first trial which ended in a mistrial. However, the trial court incorporated the first suppression hearing into the record of the second trial and only heard additional questions regarding when the marijuana was found. Nonetheless, his ruling remained the same.

[5] Defense counsel argued before the second trial that the marijuana was mentioned for the first time on the video from the dash cam after Pulley was in the back of Brewer's patrol car. According to defense counsel, this fact proved that the officers began searching the vehicle prior to finding the marijuana and, thus, the cocaine was not found pursuant to a valid search incident to arrest. Defense counsel called Officers Craven and Brewer and both emphasized that the marijuana was found prior to Pulley entering the patrol car and prior to the search of the vehicle. Craven testified that the marijuana was found during the initial struggle with Pulley and placed back in his pocket because Pulley was still struggling with the officers. Pulley took the stand for the limited purpose of testifying that the officers found the marijuana after he was placed in the patrol car and also after the cocaine was found.

The trial court noted that he did not consider the situation to be an inventory search and, even if he did, the fact that the tow truck operator's signature was missing would not have invalidated the search.

During trial, Craven explained to the jury that after the cocaine was discovered, the "[drugs] were placed in evidence inside the Laurens Police Department." Next, Officer Brewer testified that he did not take the cocaine from the scene. According to Brewer's recollection, Craven "took possession" of the drugs, however, Brewer could not remember "how the drugs got from [the scene] to the patrol office."

At the time of the incident, John Stankus was the evidence custodian for the Department. Stankus testified that he retrieved the cocaine from the lockbox and that the chain of custody form indicated Craven was the officer that placed the cocaine in the lockbox. However, the chain of custody form suggested that Stankus received the cocaine from Craven in person. In response, Stankus admitted the form was incorrect, but maintained it was standard procedure to write "in person" in the space provided that asks whether the custodian received the evidence by mail or in person.

Maribeth McCormick, a forensic scientist in the drug analysis department of the South Carolina State Law Enforcement Division (SLED), testified that she received the cocaine from the Department. After McCormick began testifying, but before stating the results of her analysis, defense counsel argued that the State failed to establish a chain of custody in regards to the cocaine. Thereafter, the following colloquy took place:

> Trial Court: Solicitor would you agree . . . we have no testimony from the time of the [cocaine] on Brewer's car [to] whenever Craven got possession of them?
>
> Solicitor: I would stipulate that we have not produced any

---

A thorough review of the video does cast doubt on whether the officers found the marijuana before searching the vehicle. However, although it appears that the officers were discussing the marijuana for the first time after the cocaine was found, we can only speculate as to when the marijuana was actually discovered.

evidence as far as when Craven leaves the scene and what happened with the drugs.

After a brief recess, the trial court determined that the State established a chain of custody sufficient for the admissibility of the cocaine. Expounding on his ruling the trial court stated:

> [E]ven though Officer Brewer did not testify that he handed the bag to Craven . . . the logical assumption is that he did. Officer Brewer is the last officer on the scene. I would be very surprised that Officer Brewer would have driven off from McDonald's with the bag of drugs on his hood. Presumably, he had to take possession of it and then turn it over to Craven at some point.

Subsequently, the State recalled Brewer. Brewer testified that, after reviewing the dash cam video, he remembered leaving the McDonald's with the cocaine and turning the drugs over to Craven. However, the dash cam video does not reflect that, and Brewer added he did not sign any paperwork indicating that he transferred the cocaine to Craven.

Thereafter, the jury found Pulley guilty as charged. Pulley appealed and his case was certified to this Court from the Court of Appeals pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

## II. Standard of Review

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "This Court is bound by the trial court's factual findings unless they are clearly erroneous." *Id*.

## III. Discussion

Pulley maintains the State presented contradictory and confusing evidence in attempting to establish the chain of custody. Because the chain was not properly established, Pulley claims the trial court erred in admitting the cocaine. We agree.

"[T]his Court has long held that a party offering into evidence fungible items such as drugs or blood samples must establish a complete chain of custody as far as practicable." *State v. Hatcher*, 392 S.C. 86, 91, 708 S.E.2d 750, 753 (2011) (quoting *State v. Sweet*, 374 S.C. 1, 6, 647 S.E.2d 202, 205 (2007)).

Where multiple people have handled the analyzed substance, "the identity of individuals who acquired the evidence and what was done with the evidence between the taking and the analysis must not be left to conjecture." *Sweet*, 374 S.C. at 6, 647 S.E.2d at 205. "Testimony from each custodian of fungible evidence, however, is not a prerequisite to establishing a chain of custody sufficient for admissibility." *Id.* at 7, 647 S.E.2d at 206 (citing *State v. Taylor*, 360 S.C. 18, 27, 598 S.E.2d 735, 739 (Ct. App. 2004)). "Where other evidence establishes the identity of those who have handled the evidence and reasonably demonstrates the manner of handling of the evidence, our courts have been willing to fill gaps in the chain of custody due to an absent witness." *Id.* at 7, 647 S.E.2d at 206.

"Proof of chain of custody need not negate all possibility of tampering so long as the chain of possession is complete." *State v. Carter*, 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001). "In applying this rule, we have found evidence inadmissible only where there is a missing link in the chain of possession *because the identity of those who handled the [substance] was not established at least as far as practicable*." *Id.* (Emphasis added.)

Prior to Brewer being recalled by the State, the State had not established a sufficient chain of custody.[6] Up to that point, the State presented testimony establishing that: 1). Craven seized the cocaine; 2). the cocaine was on the hood of Brewer's car when Craven left the scene; 3). Brewer initially testified that he did not take the drugs from the scene; 4). Craven placed the drugs in the Department's evidence lockbox; and 5). the evidence custodian admitted that he did not receive the cocaine from Craven personally as was indicated on the chain of custody form. Consequently, as the trial court noted and the State stipulated, there was no testimony or forms indicating how the cocaine was transported from Brewer's car back to Craven. Thus, at the time of the trial court's ruling, it was error to assume that Brewer transferred the cocaine to Craven and the State had established a sufficient chain of custody as far as practicable. *Sweet*, 374 S.C. at 6, 647 S.E.2d at 205 (stating "who acquired the evidence and what was done with the evidence between the taking and the analysis must not be left to conjecture").

Therefore, we must determine whether Brewer's subsequent testimony cured the missing link. We conclude it did not. Initially, Brewer testified unequivocally that he did not take the cocaine from the scene. In response, defense counsel argued the State failed to establish a sufficient chain of custody. After a break in the trial, the trial court overruled the objection and admitted the cocaine into evidence.

---

[6] Pulley did not object to the analysis of the cocaine.

Subsequently, the State recalled Brewer and he testified that, after reviewing the video, he remembered taking the drugs from the scene. However, the dash cam video does not reflect Brewer's recollection. Additionally, Brewer admitted he did not sign any paperwork indicating that he transferred the cocaine to Craven.

Although a perfect chain of custody is not required, a sufficient chain of custody requires more than the State presented in this case. Here, the express denial of handling the cocaine by Brewer, followed by a stipulation of a missing link by the State, the subsequent reversal by Brewer that he did in fact take the cocaine from the scene, coupled with the State's failure to produce testimony from Craven indicating how he obtained possession of the cocaine after the drugs were seen on the hood of Brewer's car, equates to conjecture. *Sweet*, 374 S.C. at 6, 647 S.E.2d at 205. As a result, the chain of custody was not sufficiently established as far as practicable. *Id.*

## IV.    Conclusion

Based on the foregoing, we hold the trial court erred in determining the State established a complete chain of custody as far as practicable. Further, we find that Brewer's testimony, which followed the trial court's ruling, did not cure the deficiency. Therefore, we reverse Pulley's conviction and sentence.[7]

**REVERSED.**

**KITTREDGE, HEARN and FEW, JJ., concur. JAMES, J., concurring in a separate opinion in which FEW, J., concurs.**

---

[7] Because the chain of custody issue is dispositive, we decline to address the remaining issues on appeal. *See State v. Allen*, 370 S.C. 88, 102, 634 S.E.2d 653, 660 (2006) (declining to address remaining issues raised by appellant when prior issue was dispositive).

**JUSTICE JAMES:** I concur in the result reached by the majority. However, I write separately to explain why I believe Officer Brewer's supplemental testimony did not rescue the State from its initial failure to establish the chain of custody.

As noted by the majority, the evidence custodian testified he could not tell from his records who delivered the crack cocaine to the evidence drop box, though he assumed Officer Craven did so. The assistant solicitor asked Officer Craven, "What did you do with the drugs after you found them?" Officer Craven responded, "They were placed in evidence inside the Laurens Police Department." Regarding Officer Craven's use of the word "they," we do not know whether this response was calculated to be vague or whether Officer Craven was claiming he took the drugs from the scene and placed them into the drop box at the police department. However, we do know that Officer Brewer's dash-cam video clearly shows that when Officer Craven drove away from the scene to take Pulley to jail, the drugs were still on the hood of Officer Brewer's vehicle.

On day one of this two day trial, Officer Brewer testified he did not take the crack cocaine away from the scene and did not deliver it to the drop box. He was specifically asked, "[D]id you take the drugs from the scene?" He responded, "No, sir." Officer Brewer was asked if Officer Craven took possession of the drugs, and he responded, "That's correct." Immediately after Officer Craven's testimony, Officer Brewer testified he never touched the drugs again, "[b]ased on [his] recollection." Finally, Officer Brewer testified he had seen the video showing the drugs on the hood of his vehicle at the time Officer Craven drove away.

As the majority clearly explains, the evidence custodian further testified that while another form stated he received the drugs "in person" from Officer Craven, in some instances—including this one—he would not be present to receive the drugs "in person." Since the evidence custodian cannot be expected to be manning the drop box every hour of every day, it is understandable that he would not be present for every delivery. However, the State still must satisfactorily establish the chain of custody of evidence passing from hand to hand to hand. Here, the custodian testified he did not receive any documents showing whose hands the drugs passed through before they were placed in the drop box.

As the majority explains, when the trial court ruled the State had established the chain of custody for the cocaine, the State clearly had not done so. The assistant solicitor admitted this, as evidenced by the stipulation quoted by the majority. Nevertheless, the trial court ruled the chain was complete based on its "assumption" that Officer Brewer gave the drugs to Officer Craven. Such an assumption is only

conjectural support for a ruling that the chain was established and is not a sufficient basis upon which to base such a ruling. *See State v. Sweet*, 374 S.C. 1, 6, 647 S.E.2d 202, 205 (2007) (holding "what was done with the evidence between the taking and the analysis must not be left to conjecture"). I agree with the majority that at this point in the trial that "as the trial court noted and the State stipulated, there was no testimony or forms indicating how the cocaine was transported from Brewer's car back to Craven."

Despite the trial court's ruling that the State had sufficiently established the chain of custody, the assistant solicitor realized the chain of custody was not sufficiently established. He therefore recalled Officer Brewer to the stand on the second day of trial. Officer Brewer's subsequent testimony—given one day after his initial testimony—that he did in fact take the drugs from the scene back to Officer Craven at the police station appears on its face to have established the chain. However, Officer Brewer's subsequent testimony completely contradicted his initial testimony and, in my view, called the integrity of the chain even more into question. In other contexts, we require trial courts to exercise discretion when considering whether contradictory statements from the same witness create legitimate factual issues. *See Cothran v. Brown*, 357 S.C. 210, 218, 592 S.E.2d 629, 633 (2004) (providing "a court may disregard a subsequent affidavit as a 'sham,' that is, as not creating an issue of fact . . . , by submitting the subsequent affidavit to contradict that party's own prior sworn statement"); *McMaster v. Dewitt*, 411 S.C. 138, 144, 767 S.E.2d 451, 454 (Ct. App. 2014) (holding a trial court must exercise discretion to determine whether to accept a "sham" affidavit).

I would require the same exercise of discretion here. I would require that before the State may supplement its proof on the chain of custody with testimony that contradicts the same witness's prior testimony on a key issue in the same case, it must present the testimony to the trial court for the trial court to determine whether to accept it. While I am certain our trial courts are equipped to conduct this inquiry, courts should take guidance from the considerations we have identified for accepting sham affidavits in civil cases. *See Cothran*, 357 S.C. at 218, 592 S.E.2d at 633 (listing six considerations).

The trial court never undertook to exercise its discretion by inquiring into Officer Brewer's subsequent contradictory account. This was error. When Officer Brewer testified for the second time, he was never asked to explain his reversal in testimony, and he never explained how the video might have refreshed his recollection. Though he stated he had "an opportunity to review the video," there is nothing in the video that would explain his reversal in testimony. Also, when Officer

Brewer initially testified, he stated he had already seen the video showing the drugs on the hood of his vehicle when Officer Craven drove away. I agree with the majority that (1) Officer Brewer's initial denial of transporting the drugs, (2) the State's concession of a missing link in the chain of custody, (3) Officer Brewer's subsequent testimony contradicting his initial testimony, and (4) the State's failure to elicit testimony from Officer Craven as to how he obtained possession of the drugs after he left the scene, all force us to impermissibly speculate as to the sufficiency of the chain of custody. Since the chain of custody of the drugs was not sufficiently established, the drugs should not have been entered into evidence. Therefore, we have no choice but to reverse Pulley's conviction.

**FEW, J., concurs.**